JOSEPH ISAAC *vs.* RUTH WILLIAMS.—*December* 1845.

In an action of replevin for negroes, upon the plea of property in the plaintiff, it appeared, in the proof of the plaintiff, that the defendant had paid him the sum of twenty-five cents for hire, on several occasions, for one of the negroes, and declared she would do so as long as the plaintiff would suffer her to keep possession, and admitted she had received clothing from the plaintiff, for the children, which he had purchased, in her presence, for them ; that the defendant had enquired of the plaintiff, whether he would agree to sell the negroes, and the plaintiff refused to sell them. The plaintiff also offered proof of an agreement between him and the defendant, that the plaintiff was to clothe the children, and the defendant to pay hire for them, until the plaintiff thought proper to take the mother and children home. The defendant proved, that the slaves were born in her possession, and so continued up to the institution of this action ; that the plaintiff married her daughter ; that when he demanded possession of the negroes, before he brought his action, he refused to state how he claimed them ; the defendant stated to the plaintiff how she had given them to her daughter, conditionally, to which he made no reply.

Isaac *vs.* Williams.—1845.

HELD, there were facts in the proof from which the jury might infer, that the plaintiff had acquired title to the negroes, otherwise than by gift; that if the jury found his claim to be in pursuance of a gift from his mother-in-law, an express delivery and transfer of the use and possession was indispensable under the act of 1763, ch. 13.

If the plaintiff's title did not flow from a gift, then evidence of a witness who saw the delivery, was not necessary; the delivery, like other facts, may be proved by inferential testimony,

In a controversy between two parties, one claiming certain negroes as purchased from the other, the proof on one side consisting of facts from which a sale might be inferred—the other resisting the claim, as owner, who only designed to make a conditional gift,—the admissions of the latter, from which a sale might be inferred, will not estop her from showing the true nature and character of her right.

Where the whole proof in a cause was oral, and the jury, in its consideration, might infer title either in the plaintiff or defendant, as they should happen to make inferences from the proof, it is error in the county court to consider the proof as establishing only one view of the cause, and instruct the jury, absolutely, upon that hypothesis. Such a course decides the matter in controversy, which could alone, from the evidence, be determined by the jury,

APPEAL from *Prince George's* county court.

This was an action of *replevin* instituted on the 23rd March 1841, by the appellant against the appellee, for a negro woman named *Harriet,* and her four children, *Washington, Mary, Joseph* and *John.*

The defendant pleaded *non cepit,* and property in herself, and property in another, and not in the plaintiff. The plaintiff joined issue on the first plea and replied property in himself, on which issue was also joined.

The jury found a verdict for the defendant on all the issues.

At the trial of this cause, the plaintiff, to maintain the issues on his part joined, proved, that in 1835, the witness being at the house of the plaintiff, the defendant came there, and in the presence of the witness, paid to the plaintiff twenty-five cents, for one year's hire of negro *Harriet,* one of the negroes replevied in this case, and at the same time called on this witness to notice the payment of said hire. That this witness asked the defendant, if she paid the plaintiff hire for said negro *Harriet?* When the defendant said, that she had always paid hire for said negro, and that she would continue to do so as long as the

plaintiff would suffer her to keep possession of said negro, or so long as she, the said defendant, thought proper to hire said negro. The plaintiff further proved, by the same witness, that in 1841, he, at the request of the plaintiff, went with him to the house of the defendant to demand the delivery of the negroes sued for in this case; and that on that occasion the defendant said, that she had paid hire in the presence of *Richard Isaac, Anne Isaac, W. W. Hall,* and this witness; and that the defendant, at the same time, stated, that she had received, from the plaintiff, clothing for the children of *Harriet,* the other negroes mentioned in this suit. This witness further proved, that when, in 1841, the plaintiff demanded said negroes of the defendant, she said, that she had never designed the children of *Harriet* for the plaintiff; that she wanted said negroes to pay her debts, and that after her debts were paid, and after her death, they could be divided amongst her heirs at law: when the plaintiff said, that he could dispose of his own servants. The plaintiff further proved, by another witness, that in the winter after the death of *Mrs. Isaac,* the wife of the plaintiff, and one of the daughters of the defendant, who died in the fall of 1834, she was in the house of the plaintiff, when the defendant being present, asked the plaintiff if he would agree to sell negro *Harriet,* and her children, the negroes mentioned in this suit; that *Harriet* had selected a *Mr. Hyatt* for her master, if the plaintiff would agree to sell them; that the plaintiff asked the defendant, if she did not recollect a promise he had made his wife, the daughter of the defendant, on her death bed? that the defendant said yes, but that promises to dead people were nothing; that the plaintiff said they were something to him, and that he would not sell them, but that he would take said negroes home; that the defendant then said that negro *Harriet* would not be satisfied at the plaintiff's, that his rules were too severe for her; that the defendant then asked the plaintiff to permit her to keep possession of said negroes as long as she lived, or until the plaintiff wanted them, that she, the said defendant, would take good care of said *Harriet,* and her children, for the plaintiff's daughters. The plaintiff further proved, by this witness, that the promise referred to, as having been

made by the plaintiff to his wife on her death bed, was, that he, the plaintiff, would give said negroes to his daughters. He further proved, by this witness, that at the time the defendant asked the plaintiff if he would sell said negroes, the defendant stated, as the reason why she desired the plaintiff to sell them, that the money put at interest would be better for the plaintiff's children. He further proved, by this witness, that in frequent conversations, held with the defendant, she always heard the defendant call the negroes, *Polly's* negroes, that is, the negroes of the plaintiff's wife. The plaintiff, further to maintain the issues on his part joined, proved, by another witness, that in 1838, 1839, or in 1840, the witness being a merchant, the plaintiff and defendant were present at his store when the defendant said to the plaintiff, that it was time those children had their summer clothes; that the plaintiff then told the witness to cut off the clothing, which he did; this clothing was paid for by the plaintiff. The plaintiff further proved, by another witness, that in 1836, he was present at the plaintiff's house when he saw the defendant pay the plaintiff twenty-five cents, which she said was the hire for negro *Harriet*, for that year; that *W. W. Hall* was present, and was called on by the defendant to witness the payment of said hire. He also proved, by this witness, that in 1836, the plaintiff furnished clothing for the children of *Harriet*. That the defendant stated, in the presence of this witness, that there was an agreement between the plaintiff and defendant, by which the plaintiff was to clothe the children of *Harriet*, and that the defendant was to pay hire for *Harriet*, until the plaintiff thought proper to take said *Harriet* and her children home. The plaintiff, further to maintain the issues joined on his part, proved, by another witness, that in 1838, the defendant came to the plaintiff's, and asked the plaintiff, whether he had the clothing for *Harriet's* children? that the plaintiff brought the cloth out and cut it off, when the defendant said, the plaintiff had not given enough, when the plaintiff told defendant to cut it off; that the plaintiff stated to the defendant that he should, the next year, take said servants home, that they were old enough to earn their clothes; that the defendant then said, that *Wash-*

*ington*, one of the children of *Harriet*, was becoming useful to her, and asked the plaintiff to let him stay with her? the defendant said, that *Mary*, one other of *Harriet's* children, should be put out near her mother, who could attend to her; that the plaintiff then said, that he could hire out and attend to his own servants. He further proved, by the same witness, that in the latter part of 1838 or 1839, the defendant being again at the house of the plaintiff, held twenty-five cents in her hand; that this witness being the grand-son of the defendant, asked her for it; that the defendant turned to the plaintiff and said, that she had brought it to pay for the hire of *Harriet*, and paid it, accordingly, to plaintiff. He further proved, by the same witness, that in 1840, the defendant asked the plaintiff, if he would pay the doctor's bill for said negroes? that the plaintiff said no, that such was not the contract; that the defendant said, that she knew the agreement was, that the only expense to which the plaintiff should be put, was the clothing of the children, but she said, that she was not able to pay the doctor's bill, when the plaintiff said, that if she would bring the bill to him, he would get the doctor to separate the items, and would pay them.

The defendant, then, to maintain the issues joined on her part, proved, by a competent witness, that he had been the family physician of the defendant for thirty-six years; that shortly before the commencement of this suit, he met the plaintiff in the road, when the plaintiff asked witness if he did not know' that negro *Harriet* belonged to him, when witness said to the plaintiff, that he had never heard any such thing; that he had heard, that she had been given, conditionally, by the defendant to the wife of the plaintiff, provided she survived the defendant; that the plaintiff said, that he had supposed all the world knew that said negroes belonged to him; that he, the witness, asked the plaintiff how he claimed title to said negroes? to which he, the plaintiff made no reply, but said that he could prove that he had always received hire for *Harriet*, and clothed her children.

The plaintiff then proved, by this witness, that at a subsequent period the plaintiff asked him to separate the items of

charge in his bill against defendant, for his attendance on said negroes, which the plaintiff said he would pay, but the witness declined to do so, unless at the request of the defendant, who, upon being consulted, refused to consent.

The defendant further proved, by another witness, that negro *Harriet* was born in the possession of the defendant, and continued in her possession up to the commencement of this suit. The defendant further proved, by this witness, that *Mrs. Isaac,* the wife of the plaintiff, died in 1834. The defendant further proved, by another witness, *W. W. Hall,* that he went to the defendant's house on the day the plaintiff went there to demand said negroes; that when he got there, the plaintiff and *Wm. Williams* were there; that when the plaintiff demanded the negroes, he, the witness, (being the grand-son of defendant,) told plaintiff that he should not have them unless he took them lawfully; that he, the witness, asked the plaintiff how he claimed the negroes, but that the plaintiff would not satisfy him; that the defendant stated that she had only given *Harriet* to *Mrs. Isaac,* the daughter of defendant, if she should survive her, the defendant, but that she never intended *Harriet's* children for plaintiff, or his wife, defendant's daughter. The witness does not recollect whether the plaintiff made any reply.

The plaintiff then proved, by a competent witness, that in 1838, 1839, or 1840, *Wm. Hall,* the last witness for defendant, told this witness, that he had just come from his grandmother's, (the defendant,) and that he had told his grandmother that she was a great blockhead to raise said negro children for the plaintiff.

The defendant further proved, by competent testimony, that when, in March 1841, the plaintiff went, with a witness, to the house of the defendant, to demand of her the said negroes, the defendant told the plaintiff he should not have them; that she wanted them to pay her debts, and that when that was accomplished, he the plaintiff, and the *Halls,* her children and grand-children, should have them. And she, the defendant, further proved, by another competent witness, that he, the witness, went to the house of the defendant, who is his grand-

mother, in March 1841, and found the plaintiff, who had gone there, with a witness, to demand the said negroes; that the plaintiff said he had come for the negroes, and would have them, when the witness, who was irritated at plaintiff's conduct, said he should not have them, unless he recovered them by law; that the defendant then declared, in the presence of the plaintiff, that she had never intended the children of *Harriet* for the plaintiff or his wife, in any event; that she, the defendant, had given *Harriet*, the mother of the other negroes sued for in this action, to the plaintiff's wife, who died in 1834, provided that she survived her, the defendant. And the witness, who gave this evidence, upon being interrogated, said, that he had no recollection that the plaintiff made any answer to this remark of the defendant.

And the defendant further proved, by several witnesses, that she is now nearly or quite eighty years of age, and has little or no property, except the negroes sued for in this action; and that she has a daughter living, who has children, and several grand children, the children of another daughter now deceased.

The defendant prayed the court to instruct the jury:—

That if they find, from the evidence, that the negro *Harriet*, in the proceedings mentioned, was verbally given by the defendant to plaintiff's wife in her life time, but that there was no express delivery of such negro to the plaintiff, or his wife, in pursuance of such gift; and that the sole use and possession of such negro, was not transferred to the plaintiff or his wife; that then the supposed gift was void, and the verdict of the jury must be for the defendant.

The plaintiff objected to said prayer, and on his part prayed the court to instruct the jury:—

That if they should believe, from the evidence, that at various times, from 1834 to 1840, the defendant acknowledged the title to said negroes to be in the plaintiff, and that the defendant, during that period, paid hire for *Harriet*, and that the children of *Harriet* were clothed by the plaintiff, by agreement between the plaintiff and the defendant. The defendant, at the time she paid the hire and received the clothes, acknowledging the title in said negroes to be in the plaintiff, and requested the plaintiff to sell said property; that then such

payment of hire, and acknowledgment of title, if believed by the jury, is evidence of title in the plaintiff to the negroes in controversy.

The court granted the prayer of the defendant, and rejected the prayer of the plaintiff, as made;—but granted it with the following modification:—

But if the jury should be of opinion, that the admissions of ownership and payment of hire were adopted as a substitute for the delivery of possession, that these admissions are not competent to convey title to the property, unless accompanied with previous delivery.

To the refusal of the court to instruct the jury, as prayed by the plaintiff, and to the instructions given by the court to the jury, the plaintiff excepted.

The plaintiff then prayed the court to instruct the jury:—

That the question to be decided by the jury in this case, is, whether the plaintiff in this action has title to the property in controversy; and that if they should believe, from the evidence, that the defendant has, upon all occasions, acknowledged the title of said negroes to be in the plaintiff, and has treated the same as the property of the plaintiff, then that said plaintiff is entitled to recover.

The court rejected this prayer, and the plaintiff excepted.

The plaintiff, then, further prayed the court to instruct the jury:—

That if the jury believe the evidence offered on the part of the plaintiff, of the admission and declarations of the defendant, relative to the manner or terms on which she held the negroes in controversy, that she paid hire for one of them to the plaintiff, and held the same, and the other negroes as the slaves of plaintiff, always admitting them to be the negroes of the plaintiff, as stated by the defendant. Then in order to maintain the issue joined on his part, it is not necessary for the plaintiff to prove, by a witness, present at the time of the actual delivery of these negroes, at the time his title is supposed to commence; but the delivery, and all the circumstances necessary to prove title in the plaintiff, may be inferred from the proof offered in this cause, as above stated, if the same be believed by the jury.

The court refused to give this instruction, as it was prayed, but granted it with this modification:—But if the jury should also believe, that such admissions of ownership and payment of hire, and the other acts mentioned in this prayer were adopted as a substitute for the delivery of possession, that then such admissions, payment of hire, and other acts, are not competent to convey title to the property, unless accompanied with previous delivery.

The plaintiff excepted to the refusal of the court to grant his prayer, and to the instruction given by the court to the jury.

The plaintiff then prayed the court to instruct the jury:—

That if the jury should believe, from the evidence in this cause, that the defendant hired the negroes mentioned in this suit from the plaintiff, and annually paid to the plaintiff hire for the same up to the commencement of this suit, that such hiring by the defendant, is an admission of title in the plaintiff.

The court refused to grant this instruction, as prayed, but granted it with this modification:—That such hiring and payment of hire, does not preclude the defendant from shewing, that she had not divested herself of title, according to the mode pointed out by law.

The plaintiff excepted to such refusal, and also to the instruction given by the court.

The plaintiff then further prayed the court to instruct the jury:—

That if the jury should believe, from the evidence in this cause, that after the death of the plaintiff's wife, the defendant, *bona fide*, hired said negroes from the plaintiff, and annually paid him hire for the same, down to the commencement of this suit, then her possession was the possession of the plaintiff.

The court, (Stone, C. J., Key and C. Dorsey, A. J.,) refused this prayer; but gave the instruction with this modification:—That such possession of the plaintiff is not such a possession as is required by law to make a valid parol gift. To which refusal of the court, and also to the instruction given as aforesaid, the plaintiff excepted.

The plaintiff prosecuted this appeal.

The cause was argued before ARCHER, C. J., DORSEY, SPENCE, MAGRUDER and MARTIN, J.

By ALEXANDER for the appellant, and
C. C. MAGRUDER and J. JOHNSON for the appellees.

ARCHER, C. J., delivered the opinion of this court.

The court below seem to have considered, that the plaintiff could only, from the evidence adduced in the cause, sustain his claim to the slaves in controversy, in virtue of a gift made of them by the defendant, and that to support such a claim thus founded, it was indispensable for him to show an express delivery of the negroes to him in pursuance of the gift, and the transfer of the use and possession, in pursuance of the act of 1763, ch. 13.

With this view of the case we cannot agree. The plaintiff, on his part, had offered evidence of the payment of hire; that he had furnished clothes for the children of *Harriet;* that the defendant had acknowledged his right to the negroes, and his power to sell them. These were all facts from which the jury may have inferred, that the plaintiff had acquired a title to the negroes in controversy, otherwise than by a gift.

We by no means intend to intimate, that from the whole of the evidence in the cause, the jury were bound so to find, but only to say, that from the facts offered by the plaintiff, which have been referred to, the jury were at liberty so to find.

The defendant, on her part, had offered evidence from which the jury might find a parol gift of the negroes to the plaintiff's wife; and on the hypothesis of the existence of such a gift, to make it valid by a true construction of the act of Assembly, the jury must have found that there was an express delivery of the negroes, and the transfer of the use and possession of the negroes from the defendant to the plaintiff. But evidence of a witness who saw the delivery, was not necessary. The delivery, like other facts, may be proved by inferential testimony.

The above remarks present our views of the law of the case, and it will be only necessary to apply these principles to the prayers and instructions acted upon and given by the court below.

There was evidence to support the prayer offered on the part of the defendant, and it contains a true exposition of the law, on the supposition, that the claim of the plaintiff rests on a parol gift of the subject in controversy.

The plaintiff's first prayer should have been granted without modification, as we have seen that the facts therein stated furnished evidence of title in the plaintiff.

This prayer, as modified, ought not to have been given as an instruction to the jury. There was no evidence that the facts therein stated were adopted as a substitute for the delivery of possession. The court might have instructed the jury, if they found that the plaintiff's claim was founded on a parol gift of the negroes, that then the facts inserted in the plaintiff's first prayer did not conduce to show title in the plaintiff, unless they should infer, from such facts, that there had been a delivery of the negroes. This, however, they did not do, and the modified instruction they did give, being obnoxious to the objection above adverted to, we think was erroneous.

The court rightly rejected the second prayer of the plaintiff, which excludes, altogether, the evidence offered on the part of the defendant, and the inferences the jury might lawfully deduce from such evidence. We cannot agree with the counsel for the appellant, that the acknowledgments adverted to in the prayer, estopped the defendant from relying on her defence. We have not considered the doctrine of estoppel, as existing between landlord and tenant, as at all applicable to such a case. No authority has been cited which conduces to such a conclusion.

From the remarks heretofore made, it follows, that the court were in error in refusing to grant the plaintiff's third prayer. Delivery may be inferred from facts and circumstances, and the facts and circumstances detailed in the prayer were such, that the jury were at liberty to draw the inferences claimed to be deducible from them.

For the reasons above stated, the court were in error in granting the prayer as modified.

There was no evidence in the cause, that all the negroes were hired. The evidence on this subject only applies to *Harriet.* For this reason the fourth prayer was rightly rejected

by the court, and the granting it with the modification, was, for the same reason, erroneous.

This instruction, as prayed, if it had been confined to negro *Harriet,* would have been right, and so, also, would the instruction, as modified; for although she should have been found to have admitted the plaintiff's right, she was not, on that account, debarred from showing that the plaintiff had no title.

The fifth prayer of the plaintiff is liable to the same objection as the fourth; and the court were right in rejecting it, for another reason: whether the possession of the defendant was the possession of the plaintiff, depended on the enquiry, whether the plaintiff's title was derived *aliunde,* the gift; if it was derived from the gift, then the defendant's possession would not be the plaintiff's, under the circumstances assumed, unless the jury should find, that the gift was accompanied with the delivery of possession.

The court, we think, were in error in granting the prayer as modified by them, because, by granting it, the court decided the matter in controversy between the parties, which could alone, from the evidence, be determined by the jury.

JUDGMENT REVERSED AND PROCEDENDO AWARDED.