SARAH HITCH, BY HER NEXT FRIEND,
vs.
JACOB G. DAVIS, AND OTHERS.     MARCH TERM, 1851.

[DONATIO INTER VIVOS, OR MORTIS CAUSA—CHANCERY PLEADING AND PRACTICE.]

IT is essential to the validity of both a *donatio inter vivos* and a *donatio mortis causa*, that there should be a *delivery* according to the manner in which the particular thing, the subject of the gift, is susceptible of being delivered; but this delivery need not be proved by witnesses who actually saw it done, but it may be inferred from facts and circumstances.

The donor must part with the legal power and dominion over the subject of the gift; if he retains the dominion, and if there remains to him a *locus penitentiæ*, there cannot be a perfect and legal donation, and that which is not a good and valid gift at law, cannot be made good in equity.

A promissory note, payable to the order of the testator, which was never endorsed by him, but which he retained during his life, and after his death was found in possession of his executor, was claimed by his daughter, as a gift, upon the ground that he had given it to her, but had retained it in his possession as her agent, to collect the interest thereon for her, which he regularly paid over to her during his life. HELD—that whatever may have been the *intention* of the testator, he had not *executed* it in the mode recognised by law to the perfection of a parol gift, not having parted with his legal power and dominion of the subject of the gift, which is therefore void in law, and equity will not make it good.

The Court cannot, under the general prayer, grant relief not warranted by the allegations of the bill; the relief under the general prayer must be consistent with the case made by the bill, and its extent and character depends upon the facts charged in the bill.

A bill charged an executor and trustee with, 1st, neglect to pay rents and profits; 2d, failure to invest a $5,000 legacy; and 3d, refusal to deliver to complainant a certain note claimed by her as a gift from the testator. The relief prayed, was an account and payment of the legacy, and rents and profits, delivery up of the note, and if assets were not admitted, an account thereof, and their application, in due course of administration, and for *general relief*. HELD—that under this bill, the defendant could not be charged as executor with the note, as assets for the payment of the legacies of the will, exceptions having been filed to the sufficiency of the averments of the bill in this particular.

The bill, so far as it sought recovery for the note, was dismissed in May, 1851, but retained as to other matters; and in February, 1852, the cause was sent to the Auditor, for an account as to such other matters. HELD—that the Court cannot order an amendment, so as to present the question of the applicability of the note as assets.

Where no time is fixed by the will for the payment of a legacy, it will bear interest from the expiration of one year after the death of the testator.

[The allegations of the bill and answer, and the facts of this case, will be found fully stated in the following opinions of the Chancellor.]

THE CHANCELLOR:

In the case of *Pennington, Adm'r of Patterson* vs. *James C. Gittings, Executor of James Gittings,* 2 *G. & J.,* 208, one of the questions raised and discussed in this case was examined and decided by the Court of Appeals, and upon the principles there settled, this case, so far as the same question is concerned, must depend.

It was there decided that neither a *donatio inter vivos* or a *donatio mortis causa* by mere parol was effectual. That in either case *a delivery* of the thing intended to be given was essential to the perfection of the gift, and that this *delivery* must be according to the manner in which the particular thing, the subject of the gift, is susceptible of being delivered; that there must be a parting by the donor with the legal power and dominion over it. If he retains the dominion—if there remain to him a *locus penitentiæ* (which must be the case when he retains the possession, and what is done is merely by parol), there cannot be a perfect and legal donation; and that which is not a good and valid gift at law cannot be made good in equity.

In that case, the subject of the supposed gift was seventy-five shares of stock in the Commercial and Farmers' Bank of Baltimore, and the allegation of the bill (which allegation was assumed by the Court to be established by the proof) was, that the testator of the defendant gave and handed to the complainant's intestate the certificate of the stock, entitling the holder thereof to the number of shares mentioned in it, at that time and in her presence endorsing his name on said certificate, informing her (she being his daughter) that he gave her the same to supply the loss of certain ground-rents which he had previously given her.

It was insisted in that case, that by the delivery of the cer-

tificate, endorsed by the alleged donor, a power was given to the donee to write over the name of the former a full assignment or power of attorney, which would have authorized the latter to cause a transfer to be made upon the books of the Bank. But this, the Court said, made no difference, because, assuming that the delivery and endorsement of the certificate gave the authority claimed, it never was executed, and as it appeared upon the face of the certificate that the stock was transferable at the Bank only, and that the endorsement, whether in blank or in full, did not and could not operate as a transfer, the gift was incomplete, both at law and in equity, for want of delivery. The stock, the subject of the supposed gift, could only be delivered by a transfer on the books, and that not having been done, though authority to do so may have been given to the alleged donee, the donor had not parted with the legal power and dominion over it, and as no valuable consideration passed, neither he, if living, nor his executor after his death, could be compelled to make the transfer.

That case, I apprehend, is entirely decisive of this, so far as the note of Mr. Rogers is concerned, which is claimed by Mrs. Hitch as a gift from her father, Solomon Betts. There is certainly no pretence for saying that there was an *actual delivery* of this note to Mrs. Hitch. The allegation of the bill is, that he (Solomon Betts), took the note of the said Lloyd N. Rogers for a piece of land sold by him to Rogers; that during his lifetime he regularly paid his said daughter, Sarah Hitch, the interest that accrued thereon from time to time; " that he gave her said note, but retained it in his possession as her agent to collect the interest thereon for her."

The note then never passed from the possession of Mr. Betts, nor can it be said, with any propriety, that he parted with his legal power and dominion over it, leaving nothing to be done by him or his executors to perfect the title of his daughter. A note like this, payable to order, could not pass by delivery merely, as would bank notes or promissory notes, payable to bearer, because, in the case of a note payable to

order, the delivery, without endorsement, would not authorize the party receiving it to sue in his own name, so that the gift of the money, the thing intended to be given, would be incomplete, and the action, if one is brought for its recovery, would have to be brought in the name of the payee, or his executor, if he be dead. *Bradley and Wife* vs. *Hunt, Adm'r of Jack*, 5 *G. & J.*, 54.

The case of *Grangiac* vs. *Arden*, 10 *Johns. Rep.*, 302, relied upon by the plaintiff's counsel in support of the gift, does not, I think, establish the point for which it was cited. In that case, which was an action at law for money received by the defendant upon a lottery-ticket, alleged to have been given by a father to his daughter, who was at the time about eight years old, the jury upon the evidence of the declarations of the father, inferred a delivery, and the Court said that these declarations and acknowledgments afforded reasonable grounds for the jury to infer, that all the formality necessary to make a valid gift had been complied with, and the right and title of the plaintiff to the money complete and vested. That delivery of possession is necessary to constitute a valid gift, was most clearly and distinctly affirmed by the Court, and the verdict of the jury was permitted to stand, because facts and circumstances had been proved, upon which the jury might and did infer such delivery. The case of *Isaac* vs. *Williams*, 3 *Gill*, 278, simply proves that in the case of a parol gift of negroes, the delivery of possession need not be proved by a witness who saw it, but that like other facts, it may be proved by inferential testimony.

And in the case before the Court now, it is not meant to be said, that the plaintiff can make out title to the note in question only by a witness who saw the possession delivered. If the facts and circumstances of this case were sufficiently strong to create a fair and reasonable presumption that Mr. Betts, having endorsed his name upon this note, actually delivered it to his daughter as a gift, her title to hold it, it is believed, could not be disputed; but it is clear, he did no such thing. On the contrary, the bill alleges, and the proof clearly shows, he retained the possession during his lifetime, and upon his

death, it is found in the hands of his executor, or of a party to whom he assigned it, though the precise time when it came to the possession of the executor does not plainly appear.

His paying the interest to his daughter during his life, is certainly a circumstance to show that in selling the land, he did not intend to take from her altogether the benefit she and her husband had previously enjoyed, from the privilege of cutting wood upon it; but it is not evidence, or at all events, it is far from being conclusive evidence, that he had given her the principal since due on the note. Indeed, looking to the whole evidence, I think the inference might fairly be drawn, that he did not intend to give her the principal, and that the gift was confined to the interest. Such is my construction of the evidence of Mr. Rogers, who, in explaining what he meant by the words used in his examination in chief, that "the whole belonged to her," said, that his impression derived from conversations with Mr. Betts was, that as he intended to give the property to his daughter (meaning the land sold to Mr. Rogers), he had devoted the *interest* of the proceeds to her use, and considered it as hers.

That Mr. Betts did not intend to give this note absolutely to his daughter, may be fairly inferred from the provisions of his will. All that she takes under the will, is placed in the hands of trustees for her separate use, free from the power, control, or disposal of her then or any future husband; and not only so, the property thus secured to her separate use, by the will, is for her *life only*, with limitations over to other uses, as in the will is provided. She then, under the will, takes nothing absolutely, her interest being limited to her separate use for life, with remainder to others. Now, it is not at all likely that Mr. Betts, whilst carefully guarding the devises and bequests to his daughter from the danger which he apprehended might result from the improvidence of others, and whilst he thus limited her interest in the property given by his will to her use for life only, would make an out and out gift of upwards of $2,500, thus placing so much of his estate, by a gift in his lifetime, exposed to perils and contingencies against which he so studiously protected the property

given by his will. Such, I say, is highly improbable. But whatever he intended to do, and conceding that I am mistaken in regard to his *intention*, I think it very clear he has not *executed* his intention in the mode required by law, to the perfection of a parol gift. That is, that he did not part with his legal power and dominion over the subject of the gift, and therefore that it is void in law and equity, will not make it good. There can, then, be no recovery, so far as the note of Mr. Rogers is concerned.

The bill, however, embraces other subjects, and with reference to these, the proceedings have become defective, in consequence of the discharge of Jacob G. Davis, a trustee under the will of Mr. Betts, and the appointment of another trustee in his place.

Before an account of these subjects can be taken, they being within the trusts of the will, it is indispensable that the new trustee should be made a party, which has not been done, and the case, therefore, as to them, will be allowed to stand over, with liberty to the complainant, by proper proceedings, to bring the new trustee before the Court.

[The Chancellor accordingly passed an order, dated the 9th of May, 1851, dismissing the bill, " so far as it seeks to recover from the defendant, Jacob G. Davis, for or in respect of the note of Lloyd N. Rogers to Solomon Betts, for the sum of $2,673 75, dated the 17th of November, 1838, in the proceedings mentioned," but " that the said bill in all other respects be retained, with liberty to the complainant, by proper proceedings, to bring before the Court, as a party, William George Krebs, the trustee appointed in the place of Jacob G. Davis, one of the defendants, to execute the trusts of the will of Solomon Betts, deceased. And it is further adjudged, ordered, and decreed, that the question of costs be reserved for further order." A supplemental bill was then filed, making the said Krebs a party, and he having answered, the cause was, with regard to the questions left open by the decree of May, 1851, sent to the Auditor for an account, from the

pleadings and proofs then in the cause, and such further proofs as the parties might lay before him. The complainant excepted to the report and accounts of the Auditor, made in obedience to this order, upon certain grounds, which sufficiently appear from the following opinion of the Chancellor, delivered at the hearing thereof.]

THE CHANCELLOR:

This cause now comes up on exceptions to the Auditor's report, made in pursuance of the order of the 9th of February, 1852, and the principal question raised by the exceptions, and discussed at the bar, relates to the liability of the defendant Davis, as executor of Solomon Betts, to account for the note of Lloyd N. Rogers, for $2,673 75, which matured and was paid by the latter at the Chesapeake Bank, on the 20th of November, 1843.

The original bill, which was filed in this cause in Baltimore County Court, on the 13th of February, 1851, embraced and sought to charge the defendant Davis, in respect of three several items of claims, two of which were founded upon provisions in the will of Solomon Betts, and one upon the ground of a parol gift, alleged to have been made by him in his lifetime, to his daughter, the complainant Sarah, of the note of Mr. Rogers.

The bill alleged, and the will of Mr. Betts proved, that he devised a portion of his real estate to his said daughter, in trust for her use during her life, and that he also directed the sum of $5,000 to be invested in stock for her use, during the same period, and that the defendant Davis, who was named one of the executors and trustees, became by the renunciation of the parties associated with him in the trust, the sole executor and trustee.

And the bill further charged, that the testator was in his lifetime seized of a lot of ground, lying contiguous to the real estate which he so devised to his daughter in trust for life, which lot of ground he had given to her, though no deed had been executed therefor; and that with her consent, he sold

the same to Mr. Rogers, taking his note therefor, which note, though retained by the testator, she alleged he gave to her, and always, during his lifetime, paid her the interest which accrued thereon.

And the title to this note constituted the third ground of claim presented by the bill, which charged the defendant Davis with having neglected to pay the complainant the rents and profits of the real estate so devised to her, with a failure to make the investment of the $5,000, or to pay her the interest thereon, and likewise with refusing to deliver her the note of Mr. Rogers, or to pay her the money due thereon. And the bill prayed that the defendant, Davis, might be compelled to account for said legacy, principal and interest, for the rents and profits of the real estate, and that he should be decreed to deliver up for her use, the note in question, and pay the interest which had accrued thereon, and had been received by him, and that if the defendant shall not admit assets sufficient to pay the said $5,000 legacy, that then an account may be taken of the estate and effects of the testator, and the same applied in due course of administration, and for general relief.

The answer of the defendant, Davis, insists that he has duly and regularly paid to the complainant all the rents she was entitled to, and that he has invested, according to the directions of the will of the testator, all and every sum of money belonging to his personal estate, which the complainant was entitled to have invested for her benefit; and with regard to the note of Rogers, the answer, by way of plea, sets up a proceeding in the Orphans' Court, in which, as the plea avers, an adjudication was made, that said note was the property of the defendant himself.

The cause came on first, to be heard in May, 1851, when, for the reasons then stated, it was decided that the title of the complainant, Mrs. Hitch, to the note in question, could not be maintained, either as a *donatio inter vivos*, or *mortis causa*, and consequently the bill, so far as it sought to recover from the defendant, for or in respect of said note, was dismissed, but in other respects was retained, with liberty to the complainant, by proper proceedings, to make a new party, which

had become necessary, by the appointment of a trustee in the place of Davis.    This was done, and by an order passed on the 9th of February, 1852, the cause, with regard to the questions left open by the decree of May, 1851, was sent to the Auditor for an account from the pleadings and proofs then in the cause, and such further proofs as the parties might lay before him.

This has been done, and in the account C, stated under instructions from the solicitor of the complainant, the defendant, Davis, as executor of Solomon Betts, has been charged with the note referred to, with interest from the 20th of November, 1843, when it was said, and as before observed, the propriety of so charging him is the only question of importance presented by the exceptions which have been argued.

In addition to the exception filed by Mr. Davis to the account C, he has filed an exception to the sufficiency of the averments of the original and supplemental bill, to enable the complainant to recover for the note of Rogers; and it seems to me very clear, that the bills contain no averment which will justify the Court in granting relief in the form in which it is now proposed to charge the defendant, with respect to this note, upon any prayer in the bill, general or special.

The object of the supplemental bill was simply to bring in the new party, and contains no averments, except that which was necessary to accomplish the purpose in view.    And with reference to this note of Mr. Rogers, the original bill, by its averments and prayer, claimed it as the property of Mrs. Hitch, by virtue of a parol gift of it to her, by her father, in his lifetime.    The question, and the only question which was or could have been raised upon that bill, was, whether the note was her property or not.    The idea that it was to be regarded or treated as assets in the hands of the defendant, as executor of Mr. Betts, was wholly repudiated, and a decree founded upon the hypothesis, that it was an asset, would have been repugnant to the very letter and theory of the bill, and the specific prayer for relief.

It is well settled upon the authority of numerous cases, that

the Court cannot under the general prayer grant relief, which is not warranted by the allegations of the bill. The limitation upon the power of the Court to grant relief under the general prayer, is, that it must be agreeable to the case made by the bill, and not be different from or inconsistent with it, 6 *H. & J.*, 29. The extent and character of the relief which may be granted under the general prayer, depends upon the facts charged in the bill, 6 *G. & J.*, 152. "If," say the Court of Appeals, in *Gibson* vs. *M'Cormick*, 10 *G. & J.*, 108, "the complainant cannot obtain the specific relief for which he prays, he may obtain any relief consistent therewith, warranted by the allegations of his bill, provided it contains a prayer for general relief."

The averments of this bill being excepted to, according to the provisions of the 5th section of the Act of 1832, ch. 302, relief cannot be granted upon the ground, that the *proof* in the cause (if there be such proof) entitles the complainant to the relief which the Court is now called upon to grant. The cause stands, and the title of the complainant to the relief she now asks for depends, upon the principles of Chancery pleading as they existed prior to the passage of the Act of Assembly; and according to these, as is too clear for controversy, the plaintiff, when she claims under the general prayer, must show allegations in her bill which will entitle her to it. But, as is equally clear, the relief she now asks under the general prayer is inconsistent alike with the averments of her bill and the specific relief therein prayed.

It is very plain, then, as I think, that in the existing condition of the pleadings, the complainant could not be permitted to charge the defendant Davis, as the executor of Solomon Betts, with this note of Lloyd N. Rogers, treating it as an asset in his hands for the payment of the pecuniary legacies bequeathed by the testator. And in this state of the case it becomes important to inquire, whether the Court would have the power, upon application, to order an amendment of the bill, so as to present the question for adjudication in this new aspect.

By the decree of the 9th of May, 1851, the bill, so far as it relates to, or sought to recover for, or in respect of this note, was dismissed; though as to other matters, not then decided, it was retained, with liberty to the complainant to amend her bill by making a new party. And by the order of the 9th of February, 1852, sending the cause to the Auditor for an account, he was expressly restricted in stating the accounts to the questions left open and undecided by the opinion and decree of May, 1851.

With regard to this note, therefore, there has been a final adjudication upon this bill; and I cannot see how it could be amended, for the purpose of raising the question of the applicability of the note, as an asset in the hands of the defendant, to the payment of the pecuniary legacies.

If, upon the original bill, the complainant's title to the note in question, as a gift from her father to her, had been the only question presented, and the Court, entertaining the opinion which has been pronounced, had dismissed the bill absolutely, there could of course be no doubt that an amendment under such circumstances could not be made. The bill being gone, there would be nothing to amend; and if any remedy remained to the party, other than by way of appeal, it would have been by filing a new bill. Does it make any difference that the bill was retained for the purpose of litigating other matters embraced in it, altogether unconnected with it, and distinct from the claim to this note ? In my opinion, it does not. The bill, with reference to this note, is no longer before the Court; nor could any question with regard to it be litigated here after the decree of May, 1851. The complainant's second exception, therefore, which objects to the report of the Auditor, because he has not charged the defendant Davis with the sum of $1,139 08, the proportion of said note which would be applicable to the payment of the complainant's legacy of $5,000, if said note is to be treated as an asset for the payment of the legacies, as shown by the account C, must be overruled.

The account A, shows the sum which Mrs. Hitch is entitled

to receive on account of her legacy to be $1,736 30; and the complainant's first exception insists that Davis should be charged with interest on this sum from the time the same was in his hands and payable, until the same was paid on the 20th of June, 1844. It appears by the defendant's vouchers 1 and 2, that he purchased for Mrs. Hitch, on the 18th and 20th of June, 1844, bonds of the Baltimore and Ohio Railroad Company, amounting together to $1,736 30, being her proportion of the assets in the hands of Davis, as executor of Solomon Betts, as shown by the accounts in the Orphans Court, and the question raised by the exception is, whether the complainant is not entitled to interest on this sum from an earlier date than June, 1844, when the investment was made.

The rule is, that when no time is fixed by the will for the payment of a legacy, it will bear interest from the expiration of one year after the death of the testator. *Crain* vs. *Barnes and Fergusson*, 1 *Maryland Chancery Decisions*, 151. Mr. Betts, the testator, died in November, 1841; and as no time was fixed by his will for the payment of the legacy, I am of opinion that the complainant is entitled to interest upon it from the end of a year after the death, and this exception, therefore, must be ruled good.

The account B, reported by the Auditor, shows that the defendant has overpaid the trust estate, and that it is indebted to him in the sum of $56 77; but this account, as already stated, is erroneous in not charging him with interest on the sum of $1,736 30, from the period mentioned; and it moreover credits him with the sum of $313 49, for which no vouchers have been produced, and this credit constitutes the ground of the complainant's third exception. The Chancellor understood, in the course of the argument, that this exception would be waived, and the credit allowed to stand; but I do not find that this has been put upon the record. But as the case must go again to the Auditor, an opportunity will be had for such admissions and agreements as the parties may choose to make, or for the production of proof in support of the credits, if necessary.