PENNINGTON, Adm'r of PATTERSON, *vs.* GITTINGS, Ex'r.
*June,* 1830.

The answer of an Executor or Administrator in his representative capacity, which asserts a fact that is not, and cannot be within his own knowledge, does not properly come within the general rule, that an answer asserting a fact responsive to the bill can only be disproved or outweighed by the testimony of two witnesses, or one, with pregnant circumstances.

When an executor or administrator answering in his representative character, alleges facts of which he can have no personal knowledge, it can but amount to an assertion of his impressions, and his speaking positively cannot alter the character of his testimony, merely because it comes in the shape of an answer, but must be allowed its due weight only ; and is not entitled to the full influence of the answer of a man, speaking of facts which may be within his own knowledge.

The gift by a father to his child of a certificate, that the father is entitled to a certain number of Shares in the Capital Stock in a Bank "transferable at the said Bank only, personally, or by Attorney," signed by the Cashier of the Bank, and endorsed in blank by the father will not sustain a bill in equity by the donee against the executor of the donor, praying for a a transfer of the stock mentioned in the certificate.

Neither a *donatio inter vivos,* nor a *donatio mortis causa,* can be by mere parol. The rule of law in either case is, that a delivery of the thing intended to be given, is essential to the perfection of the gift.

The delivery must be according to the manner in which the particular thing is susceptible of being delivered ; and that which is not capable of being delivered is not the subject of a donation. There must be a parting by

the donor, with the legal power and dominion over it. If he retains the dominion, if there remains to him a *locus penitentiæ*, (which must be the case, where he retains the possession, and what is done, is merely by parol,) there cannot be a perfect and legal donation.

A gift which is not good and valid at law, cannot be made good in equity.

The consideration of natural love and affection is sufficient in a deed, but a mere executory contract, cannot be supported on the consideration of blood, or natural love and affection. There must be something more, a valuable consideration, or it is not good, and cannot be enforced at law, but may be broken at the will of the party.

APPEAL from *Chancery.*

The bill in this case was filed on the 18th of April, 1823, in *Baltimore* County Court, by *Ann Patterson*, the appellant's intestate, against the appellee, *James C. Gittings*, as executor of *James Gittings*. Afterwards the proceedings were, at the instance of the complainant, transmitted to the Court of Chancery on the 5th day of October, 1825. The bill stated that *James Gittings*, the father of complainant, late of *Baltimore* county, duly made his last will and testament, with a codicil thereto annexed, bearing date, the former on the 16th of September, 1818, the latter on the 6th day of November, 1820, and thereby amongst other things gave and bequeathed unto the complainant certain bank stock, and ground rents, and after giving some other legacies, the testator appointed *Richard Gittings*, *Archibald Gittings*, and *James C. Gittings*, his executors, and declared the said *James C. Gittings* his residuary legatee. That the said testator died on the 15th of February, 1823, without revoking said will, save by his codicil, and without revoking said codicil; whereupon the said *Richard* and *Archibald Gittings*, renounced the executorship, and the said *James C. Gittings*, the remaining executor, and residuary legatee, duly proved the said will, and undertook the execution thereof, as appears by exhibit A, filed as a part of the bill. That said executor took possession of the personal effects of the testator, to an amount more than sufficient to pay his debts, funeral expenses, and legacies. That said testator, about two years before his death, gave to

complainant the ground rent, arising from property in the city of *Baltimore,* worth, at the time of the donation, $260 per annum. That in consequence of the depreciation in said property during the life of the testator, the complain- ant advised with a certain *Edward Palmer,* as to the course necessary to be pursued by her to repair the loss occasioned by such depreciation, and that *Palmer,* in conversation with said testator a short time before his death, was told by him that he was sorry the complainant had lost her said ground rents, and that something should be done for her. That soon after the aforesaid conversation, the complainant visited the testator at his residence, and that, on that occasion the testator gave, and handed to her, certificate No. 446, *Commercial and Farmers' Bank of Baltimore,* entitling the holder thereof to 75 shares of the capital stock of the said bank, as will appear by exhibit B. That said testator, at that time, and in her presence, endorsed his name on said certi- ficate, *informing* her that he gave her the same, to supply the loss of the ground rent. That since the death of the testator, complainant has requested his said executor to transfer the said stock to her, which he refuses to do. *Prayer,* that he may be compelled to transfer the *same,* and for further relief.

EXHIBIT A, is a certificate of the Register of Wills of *Baltimore* county, of the granting of letters testamentary to the defendant.

EXHIBIT B, is as follows: "Commercial and Farmers' Bank of Baltimore, No. 446. February 9th, 1819—This is to certify, that *James Gittings, Sen.* is entitled to seventy- five shares in the capital stock of the Commercial and Far- mers' Bank of Baltimore, on each of which thirty dollars have been paid, transferable at the said Bank *only, person- ally, or by attorney.*        *Geo. T. Dunbar, Cashier.*"
     75 shares.

The answer of *James C. Gittings* states, the testator, *James Gittings*, the father of complainant, did, about the time mentioned in the bill, duly make his testament and last will, whereby he did devise and bequeath certain property to the complainant; and after making various other devises and bequests in favor of his other children, and grandchildren, he declared this defendant his residuary legatee, and constituted him, together with *Richard Gittings* and *Archibald Gittings*, joint executors thereof. The answer admits the death of the testator about the time specified, the renunciation of the other persons named as executors, and that he the defendant undertook himself the exclusive execution of said will, which he proved; and that he took possession of the personal estate of the testator, which he admits was more than sufficient to pay his just debts and legacies; the answer further admits the donation of the ground rent as charged, and a depreciation in the annual value thereof; it alleges that *Palmer* called on the testator, and in the presence of respondent mentioned the depreciation of the ground rent; that it then yielded nothing, and proposed to testator to take the ground rent back, and to give the complainant stock in lieu of it, which she would prefer; to this the testator replied, that it was too late, he had made his will, and could not alter it; the answer denies that the testator gave or intended to give to complainant the certificate for seventy-five shares of stock in the *Commercial and Farmers' Bank*, as alleged, and puts the complainant on the proof of the allegation; it denies also the delivery as stated; expresses a doubt of the genuineness, of the endorsement of the name of *James Gittings* thereon, and supposes that the same was made a considerable time before his death. The defendant acknowledges that he refused to transfer the stock, from a conviction that complainant had neither a legal nor equitable title thereto.

A commission issued, under which proof was taken and filed, but the same does not appear to be material.

BLAND, Chancellor, (11th June, 1827.)    This case standing ready for hearing, and the solicitor of the plaintiff having been heard, and no counsel appearing for the defendant, the proceedings were read, and considered.

The answer is fully responsive to the bill.    The defendant has positively denied every allegation, upon which the plaintiff has rested her equitable pretensions, and the proofs and circumstances are too feeble to sustain the plaintiff's case, in opposition to an answer so clear, and strong: Whereupon, it is decreed that the bill be dismissed with costs.

From which decree the complainant appealed to this Court.

The case was argued before BUCHANAN, Ch. J., EARLE, MARTIN, and STEPHEN, J.

*Winchester* and *Mayer*, for the appellant, contended,—

1. That the answer is not fully responsive to the bill, and does not deny the allegations of it, so positively and directly, as to require the evidence of two witnesses, or one and circumstances to overthrow it.   2. That the rule in reference to answers should not be applied to this; if the representative capacity of the appellee, and the circumstances of the case be considered.   3. That the fact of *Mrs. Patterson's* possession of the certificate endorsed by the testator, proved the delivery of it; and that the certificate so endorsed, amounts to an equitable transfer of the stock, and considered with the evidence in the cause, entitled the complainant to a decree in her favor, even admitting the answer to be fully responsive, and to deny the equity of the complainant.

On the 3d. *point* they referred to *Reed vs. Ingraham*, 3 *Dallas*, 505.   1 *Cranch*, 438, 439.   *Roberts vs. Gibson*, 6 *Harr. and Johns.* 128. 1 *Campb.* 442.   *Russell vs. Langstaff, Douglass*, 514.   *Violett vs. Patton*, 5 *Cranch*. 142. 2 *Stark*. 308.   3 *Stark*. 1642.   3 *Campb*. 239.   *Peacock*

*vs. Rhodes,* 2 *Douglass,* 633. *Wilkinson vs. Nicklin,* 2 *Dallas,* 396. *Dugan vs. United States,* 3 *Wheat.* 172. *Chitty on Bills,* 173, 174.

On the 1st. and 2d. *points* they referred to *Ringgold vs. Ringgold,* 1 *Harr. and Gill,* 82. *Newell vs. Huntington,* 1 *Johns. Ch. Rep.* 107. *Kane vs. Bloodgood,* 7 *Johns. Ch. Rep.* 110. 9 *Cranch.* 153, 160.

They insisted that the gift of the stock would be good, as a *donatio mortis causa. Ward vs. Turner,* 2 *Ves. Sr.* 432, 442. 3 *Atk.* 215. *Hill vs. Chapman,* 2 *Brown Ch. Rep.* 613. *Blount vs. Burrow,* 4 *Ib.* 72. *Pember vs. Mathers,* 1 *Ib.* 52.

*Taney,* (Att'y Gen'l.) and *U. S. Heath,* for the appellee. The answer is responsive to the bill, and denies the gift of the stock, as well as the certificate, and it concludes its denial by calling on the complainant to prove her allegations. There is no proof that the endorsement on the certificate was made at the time of the alleged delivery, and unless that was the case, the endorsement can have no legal effect. If a bill had been filed against the testator to compel a transfer of the stock, a decree for that purpose could not have been obtained; how then can one be had against his executor? But suppose the allegation in the bill is proved, that is, suppose the *certificate* was actually endorsed, and delivered for the purpose of a donation, can the complainant recover? A contract between testator and complainant is not pretended, no consideration is charged or proved, and if there is any contract therefore, it is a contract to give, which is *nudum pactum* and void. To constitute a good gift of a chattel, there must be an actual delivery of the *thing* given, in pursuance of the gift. 2 *Black. Com.* 441. *Smith vs. Smith,* 2 *Strange,* 955. *Noble vs. Smith,* 2 *Johns. Rep.* 52. The *stock,* the subject of the supposed gift in this case, is a chattel; and a delivery of the certificate is not a delivery of the stock, which is a fund in bank, of which the certificate is not

even a muniment of title. By a delivery of the certificate, dominion over the stock is not transferred; the party notwithstanding is entitled to the dividends, and may cause a transfer to be made on the books of the bank; he cannot therefore be said to part with the property. 8 *Petersdorf*, 464. A delivery of South Sea annuities, by way of donation, does not divest the donor of his title to the stock. *Ward vs. Turner*, 2 *Ves. Sr.* 431. *Mary and Jane Tate vs. Hilbert*, 2 *Ves. Jr.* 111. *Bryson vs. Brownrigg*, 9 *Ves. Jr.* 1. *Powell on Mort.* 1028, *Coventry's Edition* (*note*.) *Noble vs. Smith*, 2 *Johns. Rep.* 52. *Fink vs. Cox*, 18 *Ib.* 145. Considering the certificate as a negotiable instrument, and admitting that the endorsement of the testator's name gave the appellant the right to write what she pleased over it, still this right is limited to the life of the testator. 2 *Ves. Jr.* 121; his death would be a revocation of the power. There is no distinction, in regard to the necessity of delivery between gifts *inter vivos*, and *mortis causa*. In both cases the gift is not good, unless the thing given be itself actually delivered. 3 *Cov. Powell*, 1027, *note* (*E.*) *Ward vs. Turner*, 2 *Ves. Sr.* 431. Gifts which are invalid at law are equally so in equity. 3 *Cov. Pow.* 1029. 2 *Ves. Jr.* 128. But the very fact of their filing a bill in Chancery, shows the impression to have been that the gift was not good at law. This however is not a good gift either at law or in equity. The thing here alleged to be given is not tangible, and cannot be corporeally delivered. It cannot be transferred by gift therefore, unless by some act which gives to the donee complete dominion over it. Stock being the subject of the gift, there should have been a formal transfer. *Cov. Powell*, 1027, *note* (1) 1028. The stock in this case was certainly not transferred; to effect that, is the object of the bill. The delivery of a note does not transfer the property, 2 *Ves. Sr.* 443, 444. *Chitty on Bills*, 3, *note* (B,) and although the endorsement of it may, certainly the endorsement of a certificate of stock, cannot have

that effect, since the paper itself shows it to be transferable in a different way.

Buchanan, Ch. J., delivered the opinion of the Court.

The bill was filed to compel the defendant, the executor of *James Gittings,* to transfer to the original complainant, *Ann Patterson,* daughter of the testator, seventy-five shares of stock, of the *Commercial and Farmers' Bank* of *Baltimore;* a certificate of which, it alleges, was given and delivered to her by the testator, who, it is stated, endorsed his name on the back of the certificate in her presence, and at the same time informed her that he gave her the stock.

The answer admits the name of the testator, ndorsed upon the certificate to Ann Patterson by Gittings, but denies that he gave or intended to give the certificate of stock to *Ann Patterson,* as alleged, and puts the complainant on proof of the allegation; and denies also the delivery of the certificate as stated. It may not perhaps be amiss here to remark, that the answer of an executor or administrator in his representative capacity, which asserts a fact that is not, and cannot be within his own knowledge, does not properly come within the general rule, *that an answer asserting a fact responsive to the bill, can only be disproved or outweighed by the testimony of two witnesses, or one with pregnant circumstances.* A plaintiff, by calling on the defendant to answer the allegations in his bill upon oath, makes the answer evidence; and as one witness would only be equivalent to the answer, and the plaintiff to prevail must have preponderating proof, it is necessary that he should have another witness, or circumstances in addition to the testimony of one, in order to turn the scale. But looking to an answer as testimony only, it must be treated as any other testimony, and the weight of it must, from the very nature of evidence, in some degree depend on the fact it asserts. Therefore when an executor or administrator answering in his representative character, alleges facts of which he can have no personal knowledge, it can but

amount to an assertion of his impressions; and his speaking positively cannot alter the character of his testimony, merely because it comes in the shape of an answer, but must be allowed its due weight only; and is not entitled to the full influence of the answer of a man, speaking of facts which may be within his own knowledge. And upon the obvious principle, that when a witness asserts a fact, of which further developments in the course of his examination prove him to be in a situation to prevent his having a full knowledge of the subject, his testimony is not entitled to the weight of that of a man swearing to facts, which may be fully within his knowledge. The answer in this case, is of that description; and is not, we think, such as to require the testimony of two witnesses, or one with circumstances to outweigh it. But as it does not admit the allegations in the bill, it puts the complainant on proof, and leaves him to sustain them as he can, unembarrassed by any supposed responsive features, of the answer. Under the view however, that we had taken of the case, it is not necessary to examine whether the allegations in the bill have been sufficiently established or not, by the proof in the cause. For supposing them to be fully proved, it does not appear to us that the object of the bill can be gratified. The alleged gift seems to have been intended as a *donatio inter vivos;* but whether a *donatio inter vivos,* or *donatio mortis causa,* makes no difference. Such a gift cannot be by mere parol. The rule of law in either case is, that a *delivery* of the *thing* intended to be given, is essential to the perfection of the gift. This is admitted; indeed it cannot be denied. As to donations *inter vivos,* it has never been doubted, that delivery of the thing intended to be given is indispensable; and the same principle is now equally well settled in relation to donations *mortis causa.* The delivery must be according to the manner in which the particular thing is susceptible of being delivered; and that which is not capable of being delivered is not the subject of a donation. There must be a parting by the donor with the legal power

and dominion over it. If he retains the dominion, if there remains to him a *locus penitentiæ* (which must be the case, when he retains the possession, and what is done, is merely by parol,) there cannot be a perfect and legal donation, and that which is not a good and valid gift in law, cannot be made good in equity.

Proceeding upon this principle, the relief sought in *Mary Tate vs. Hilbert,* and *Jane Tate vs. Hilbert,* 2d *Vesey, Jr.* 112, was refused where a man, a short time before his death, gave one a check on his banker, which was no presented before his death, and to the other a promissory note, both of them being his relations. They were strong cases, particularly that of the check, which, if it had been presented before the death of the deceased, would have been paid, the *banker* having sufficient funds in his hands.

But the money, the thing that was intended to be given, not having been delivered, they were not good and available donations in law; the promissory note and the check being only evidences of contract, they did not transfer the possession of the money, nor invest the persons to whom they were respectively given, with the legal dominion over it, which continued in the deceased until his death, when the property vested in the executors. A promissory note delivered as a donation, is not a vested gift of the money, but only a promise or engagement to give; and imposes no stronger obligations, nor affords a better ground of action, than a promise to deliver any chattel as a gift. Such intended donations cannot be enforced on the consideration of blood, which has been insisted on in this case, and was probably a leading motive with the defendant's testator; in the cases referred to, in 2d *Vesey, Jr.* 112, *Mary Tate* and *Jane Tate* being stated to have been his relations.

The consideration of natural love and affection is sufficient in a deed; but a mere executory contract, that requires a consideration, as a promissory note, cannot be supported on the consideration of blood, or natural love and affection there must be something more; a valuable consideration, or

Pennington, Adm'r of Patterson *vs.* Gittings' Ex'r.—1830.

it is not good and cannot be enforced at law, but may be broken at the will of the party. And being void at law for want of a sufficient consideration, Chancery cannot sustain and enforce it. The cases of *Mary Tate*, and *Jane Tate vs. Hilbert*, have been mentioned as striking cases, in which the Lord Chancellor manifested a strong desire, more than once expressed, to grant the relief prayed; a desire not foreign from us, so far as sitting here we are permitted to entertain it, but we are, as he then was, restrained by the settled and stubborn rules of law. The case of *Ward vs. Turner*, 2d. *Vesey, Sen.* 431, is just this case. It was a bill to compel a transfer of *South Sea* annuities, the receipt for which had been delivered to the complainant's testator by one *Flog*, saying, "I give you, *Mosely*, these papers, which are receipts for *South Sea Annuities*, and will serve you after I am dead." It was argued for the complainant that the delivery of these receipts, with the strong words of gift accompanying it, was as much as could be done towards giving the annuities, except a mere transfer in the books. But it was held that the annuities being the thing intended to be given, a delivery of the annuities was indispensably necessary to make it a good donation; that the delivery of the receipts was not sufficient, and that such a donation could not be made without a transfer, or something equivalent, that being the only mode in which stock or annuities are susceptible of being delivered.

It is supposed that this case differs from that, because, as is alleged, that *James Gittings*, at the time of delivering the certificate of stock to his daughter, endorsed his name upon the back of it (which does not appear to have been done by *Flog*, when he delivered the receipts for the annuities) which, it is contended, gave her authority to write over it a full assignment or a power of attorney, which would have enabled her to go to the bank, and cause a transfer of the stock to be made to her on the books. But it is not perceived that this makes any difference, nor is it necessary to inquire whether that endorsement gave any such autho-

rily; if it did, it never was executed. It appears upon the face of the certificate itself that the stock was transferable at the bank only, and it is admitted that the endorsement, whether in blank or in full, did not, and could not, operate to transfer the stock; and as it was the stock and not the certificate, that was the subject of the intended gift, it matters not whether the endorsement was in full or in blank; for, as in the case of the check on the banker, which not being presented and paid in the life-time of the maker, the intended donation of the money was defeated for want of delivery, notwithstanding the holder of the check might, by presenting it in the life-time of the maker, have obtained the money, and thus perfected the gift; so here, even if by the endorsement of the certificate, whether filled up or remaining in blank, *Mrs. Patterson* might have gone to the bank in the life-time of her father, and caused a transfer of the stock to herself on the books of the bank, the only way in which the stock, the thing that was intended to be given, could be delivered, and thus have perfected the donation; yet, not having done so, it was not a valid gift of the stock, either in law or equity, for want of delivery. It was not a valid gift in law, otherwise there would have been no necessity for going into Chancery to perfect it. And being void in law, Chancery cannot interpose to make it good or enforce it. If *Mr. Gittings* was alive, it could not be seriously contended, that he could be compelled to transfer the stock in the absence of any consideration; and the same principle applies to his executor. His death does not make that good, which was bad before.

DECREE AFFIRMED, WITH COSTS.