GRIMM v. WARNER ET AL.

1. **Promissory Note:** WHEN HELD AS COLLATERAL: INDORSEMENT. Where a promissory note had been transferred by indorsement as collateral security, and then, before maturity, with the knowledge of the indorsee, the payee had sold it to a third party, into whose possession it did not come until after maturity, *held* that the latter acquired it free from equities, and occupied the position of a good faith indorsee before maturity.

2. **Contract:** SALE OF GOOD WILL. A contract for the sale of the good will of a business does not bind the vendor to abandon his trade or occupation, and he may serve as an employe of one who is engaged in the same kind of business in the same place.

*Appeal from the Johnson Circuit Court.*

MONDAY, DECEMBER 11.

ACTION by the indorsee of a promissory note. The defendants allege that the note was transferred after maturity, and

set up, as a counter claim, that the payee of the note sold to the maker the good will of a certain ice business, and bound himself not to engage in the same business in Iowa City, and that he has violated this contract, whereby the makers of the note have sustained loss for which they seek to recover in this action. There was a verdict and judgment for plaintiffs in the sum of $700. Plaintiff appeals. The further facts of the case involved in the questions of law ruled upon by the court appear in the opinion.

*Fairall & Bonorden*, for appellant:

*Clark & Haddock*, for appellees.

BECK, J.—I. There was evidence introduced upon the trial of the case in the court below, tending to show that, prior to 1. PROMISSORY note: when held as collateral: indorsement. the maturity of the note in suit, the payee indorsed it in blank and deposited it in a bank as collateral security upon a loan he had effected there; that prior to the payment of his own paper and before the maturity of the note, he sold this note to plaintiff, receiving consideration therefor. There was no indorsement or transfer of the note in writing to plaintiff, and it remained in the possession of the bank until after maturity, when it was delivered to plaintiff, the indebtedness of the maker for which it was pledged being then paid. Thereupon the plaintiffs requested the court to give the following instruction:

" 3. If the jury find from the evidence that, before the note sued on was due, plaintiff, in good faith and for a valuable consideration, bought said note of the payee, and that at the time of the purchase thereof said note, indorsed in blank, was in the possession of the First National Bank of Iowa City, as collateral security for the payment of a note by Eberle given said bank, and if you find that after the said purchase; if any there was, as a part of the transaction, plaintiff and John Eberle (the payee) went together to the bank and notified its cashier of the sale of said note and said bank recognized said sale, and if you find that plaintiff paid the note due the bank although such payment was made after the maturity of the

note sued on, you will be justified in finding plaintiff to be *bona fide* holder of the note sued, and if you so find, plaintiff is entitled to recover the full amount of said note with interest as claimed."

This instruction was refused and the following was given:

"6. If the jury believe from the testimony that the note in suit was held by the First National Bank of Iowa City as collateral, indorsed in blank by Eberle (the payee), until Jan. 22, 1875, and was then paid off and delivered to Grimm for the first time, then Grimm's right as owner or holder dates only from that time and being subsequent to the maturity of the note, the note is liable in his hands to the same defenses which it would be liable to in the hands of Eberle."

The instruction given, in our opinion, is erroneous, and the one refused presents a correct rule of law and should have been given. The principles upon which this conclusion is based will be briefly stated.

A holder of negotiable paper, to be protected against equities existing between the original parties, must have acquired it by indorsement before maturity. A transfer, except by indorsement, even before maturity carries no such consequences. *Franklin v. Twogood*, 18 Iowa, 515. The holder under a blank indorsement may transfer the paper without any further indorsement, or without filling up the blank; in that case the transferee will take it as an indorsee with all the rights of such a party. The indorsement of a promissory note to be taken as collateral security confers the legal title and property of the payee upon the holder. *Sheldon, Hoyt & Co. v. Middleton*, 10 Iowa, 17; *McCarty v. Clark,* Id., 588.

Applying these familiar principles to the case which the evidence tended to establish, we discover that, if the bank transferred the note to plaintiff upon the blank indorsement, under a *bona fide* arrangement among all the parties concerned, he acquired the legal title to the paper. If under a like *bona fide* arrangement, made before the maturity of the note, the payee had transferred all his equities and contingent interest therein to plaintiff, it is plain that he acquired thereunder the legal property in the instrument. The bank held

the legal title and property in the note; the payee held the right in law and equity to a re-transfer to himself upon the payment of the debt for which it was held as security. This right he was authorized, *bona fide*, to transfer to plaintiff. If such transfer was made before the maturity of the paper, plaintiff would occupy the position of a good faith indorser of the bank receiving the paper in due course of business, before maturity, in whose hands it would be subject to no equity existing between the original parties thereto.

II. The note in suit was given for the purchase of certain property and the good will of a business under an instrument **2. CONTRACT: sale of good will.** executed by the payee of the note, in the following words: "For the consideration of two thousand dollars, I hereby sell, assign and transfer to Warner all my right, title and interest in and to the tools, ice-houses (two) in Iowa City, and the business and good will thereof, and I agree not to engage in the ice business in Iowa City, Iowa. January 14, 1874. (Signed) John Eberle." The answer of defendant sets up the breach of this obligation and the damages resulting therefrom, as a counter claim to plaintiff's action. There was evidence tending to prove that the payee of the note, after the execution of the contract aforesaid, was engaged as an employe of other parties in putting up ice and in conducting the ice business in Iowa City. The court instructed the jury, in effect, that this amounted to a violation of his contract, which bound him not to render personal services as an employe of other parties engaged as rivals in the ice business, and that his "personal employment in any rival business or establishment" would constitute a violation of the terms of his covenant.

The instructions presenting this rule are erroneous. It cannot be claimed that the sale of the good will of a business will bind the seller farther than that he will do no act which will interfere with the purchaser retaining the customers that, at the time of the contract, patronized the seller. He is bound to do no act which will divert the business which he transfers to the purchaser. The establishing of a new business of the same kind might have such an effect. Authorities, however,

are to be found which hold this would not be a breach of a contract transferring good will. See *Rupp v. Over*, 2 Brews., 133; *White v. Jones*, 1 Abb. Pr. Rep. (N. S.), 328, and authorities cited. But, it is very plain, the seller will not violate his contract by serving other persons in the same business, if he had no part in bringing into existence the rival establishment. The contract for the sale of good will is not to be construed into an undertaking that the vendor shall abandon his trade, pursuit or occupation. If he may exercise it without violating his contract, he surely can take employment from any one, if he acts in good faith and does not do so for the purpose of establishing a rival business.

III. The covenant of the contract which is the foundation of defendants' claim for damages, to the effect that the payee of the note should not engage in the ice business in Iowa City, was not violated by personal services rendered by him to others, if he acted in good faith and was not interested in the business further than as an employe. He does not engage in the ice business by working for those who were so engaged. The covenant is intended to bind him not to carry on the business. The distinctions between the act of engaging in a business and of serving one who is engaged in business, are obvious and need not be pointed out.

The instructions upon this branch of the case, so far as they are in conflict with the views we have expressed, are erroneous.

Other questions presented in the argument of counsel we forbear to discuss or pass upon, as the judgment of the Circuit Court for the errors pointed out must be

REVERSED.