# MARY ELIZABETH LIPSON

## *vs.*

## CHARLES R. EVANS AND SAMUEL S. FIELD, EXECUTORS OF WILLIAM H. EVANS, DECEASED.

*Equity: jurisdiction; fraud; cancellation of receipts and surrender of assignments; equity pleading; bill must be specific, and state facts; not mere conclusions of the pleader. Bonds: pledge of—; right to transfer or assign subject to pledge.*

In a proper case, equity has jurisdiction to order the cancellation of receipts and the surrender of assignments thereof, when the same were wrongfully executed or obtained.     p. 377

While, in a bill of equity, it is not necessary to state minutely all the facts that may be relied upon, yet all the material facts on which reliance is placed for equitable relief must be set forth.                              pp. 377-378

Averments that are merely the conclusions of the pleader are not sufficient.                              p. 378

An owner of bonds in the usual form, which he has pledged as collateral with a third party, has a right to transfer the title to them by a proper assignment, subject to the lien of the pledgee.                              p. 380

Delivery in such cases need not be actual, but may be constructive or symbolical.                              p. 381

*Decided December 6th, 1918.*

Appeal from the Circuit Court of Baltimore City. (SOPER, C. J.)

The facts are stated in the opinion of the Court.

The cause was argued before BOYD, C. J., BRISCOE, THOMAS, PATTISON, STOCKBRIDGE and CONSTABLE, JJ.

*George D. Dean* (with *Eldridge Hood Young* on the brief), for the appellant.

*S. S. Field,* for the appellees.

BOYD, C. J., delivered the opinion of the Court.

This is an appeal from an order overruling a demurrer to a bill of complaint filed by the executors of William H. Evans (appellees) against Mary E. Lipson (appellant). The bill alleges:

1. That among the assets belonging to the estate of William H. Evans are twenty bonds of the Mapos Central Sugar Company, each of the par value of $1,000 and of the actual value, as appraised, of $700;

2. That they were not in his possession at the time of his death, but he had loaned them to the company, together with other bonds of the company, for the purpose of permitting it to pledge them as collateral security for loans obtained for the further development of the company's extensive sugar plantations and mills in Cuba; and on August 19th, 1915, the Mapos Company delivered to said Evans a receipt for the twenty bonds loaned to it for deposit with the West India Finance Company of New York City as collateral security; that the plaintiffs are informed, believe and aver that the body of the receipt, omitting the signature, is correctly copied in the exhibit filed;

3. That upon their qualification as executors they found among the papers of the estate of William H. Evans a receipt for all the bonds of the Mapos Company which he had loaned to that company for the purpose aforesaid, except the receipt for the twenty bonds, and they promptly notified the company by letter of January 31, 1917, and subsequent

letters, that they had been unable to find a receipt for the twenty bonds, that they as executors were the owners of said bonds and that the company should not pay any interest thereon or deliver the bonds to any party excepting plaintiffs; that the bonds are still in the possession of the Mapos Company or its pledgee, but they are advised that the receipt of August 19, 1915, is in the possession of the defendant with certain endorsements thereon or attached thereto, and that she has made demand upon the Mapos Company for the payment to her of the interest or coupons upon said bonds and for the delivery to her of the bonds when they are released by the pledgee of the Mapos Company, which is now holding them.

That they are advised, believe and aver that said demand was made by defendant upon the Mapos Company by letter of March 13, 1917, to Charles Heebner of Philadelphia, Pa., who is secretary and treasurer of the company, and that she enclosed with the letter what purports to be a copy of the receipt of August 19th, 1915, given by the company to said Evans, and copies of what purport to be an assignment and reassignment thereof, omitting, however, from the copies the signatures and witnesses thereto. Copies of the letter, of the receipt and the purported assignment and reassignment, being copies of what defendant sent Charles Heebner were filed.

4. That the defendant obtained possession of the receipt from William H. Evans "under circumstances and conditions which give her no right in the view of a Court of equity to hold the same as against the plaintiffs; that there never was any valuable consideration or any good consideration within the purview of the law or of the Court for the delivery of said receipt by the said William H. Evans to the said defendant."

That the plaintiffs do not know whether or not the writing which purports to be an assignment of the receipt was duly signed by said Evans, but they say that if it was so signed, then there was no consideration, either valuable or good, for

the execution of said assignment; that they do not know the fact as to the execution by the defendant of the paper purporting to be the reassignment of the bonds named in the receipt, but they say that said reassignment indicates that the defendant never acquired any title to the said twenty bonds mentioned in said receipt.

That the receipt and the papers purporting to be an assignment and reassignment are in possession of the defendant, and therefore they cannot make more particular averments in reference to them; "but they charge and aver that the defendant obtained possession of said receipt, and of said paper purporting to be assignment of the bonds mentioned in said receipt, without any consideration, and under circumstances which give the defendant no title or right to said bonds, or to the income or interest thereon;" that the possession of the receipt and of the paper purporting to be an assignment of the bonds is a cloud upon the title of the plaintiffs to said bonds and prevents them from receiving from the Mapos Company the income or interest upon them, or said bonds, and that the defendant should be required to deliver up the receipt, together with the paper purporting to be an assignment of the bonds, to the plaintiffs.

The bill then prays that the defendant, a resident of Baltimore, be required to bring into Court, to be surrendered to the plaintiffs, the receipt and the paper writing purporting to be an assignment of the twenty bonds from Evans to her, and for general relief.

The copies of the letter to Mr. Heebner, of the receipt and of what purports to be the assignment and the reassignment filed with the bill are as follows:

"Baltimore, Md., March 13, 1917.
"Mr. Charles Heebner,
　"c/o The Reading Building,
　　"Phila., Pa.
"Dear Sir:
　"I wish to notify you I am a holder of twenty thousand dollars' worth of bonds of the Mapos Central

Sugar Co. I also wish to state that when the interest is next due on these bonds that you will send me the clippings for the amount.

"Thanking you in advance, I am,

"Very truly yours,

"(Signed)   Mrs. Mary Elizabeth Lipson."
"1710 John St.

"P. S.—I am enclosing you a duplicate copy of the *recite* I now hold.

---

" '$20,000.'           Baltimore, August 19, 1915.

" 'Received of William H. Evans, of Baltimore City, First Mortgage Bonds of the Mapos Central Sugar Co. to the amount of Twenty Thousand ($20,000) Dollars, which he has agreed to loan to the Mapos Central Sugar Co. for deposit with the West India Sugar Finance Co. of New York City, as a collateral security for the fulfillment of an existing contract.

" 'The Mapos Central Sugar Company hereby agrees to refund and deliver to the said William H. Evans, his heirs or assigns, First Mortgage Bonds of the corporation to the amount of said loan of bonds, viz, ($20,000), on or before the 20th day of August, 1916, or as soon thereafter as this company has settled their account with the said West India Sugar Finance Company for loans of money advanced to this company for the seasons of 1915 and 1916.

" 'In witness whereof, The Mapos Central Sugar Company, by its proper officers, duly authorized, hereby affixes its name and corporate seal of this receipt and agreement this 19th day of August, 1915.

" 'Witness:            . . . . . . . . . . . . . . . . . . . . . . . .'

" '*Assignment of the Bonds Named in the Within Receipt.*

" 'For one dollar and other good and sufficient consideration, the receipt is hereby acknowledged, I, the undersigned, William H. Evans, of the City of Balti-

more, Md., hereby assigns to Mrs. May Elizabeth Lipson, of Baltimore City, the twenty thousand dollars ($20,000) of the First Mortgage Bonds of the Mapos Central Sugar Company, specified on the within receipt, and I, by these presents, hereby authorize and instruct the Mapos Central Sugar Company, by its duly appointed officers, that when the said $20,000 bonds have been surrendered by the West India Sugar Finance Company of New York (who now hold same as collateral security), that they are to deliver same to the said Mrs. Mary Elizabeth Lipson or to her heirs, or assigns, on the surrender of the within receipt containing this endorsement of assignment of said $20,000 of bonds.

> " 'In testimony whereof, I, the said William H. Evans, hereby affix my name and seal this 18th day of September, 1915.

" '............          ..........................

" '...........'

" '*Reassignment of the Bonds Named in the Within Receipt.*

" 'For $1 and other good and sufficient considerations received by me, and which I hereby acknowledge, I, the undersigned, Mrs. Mary Elizabeth Lipson, of Baltimore City, Md., hereby assign and authorizes and directs my executors, heirs or assigns, that in the event of my death, or disability, to deliver to William H. Evans, or his legal representatives, or assigns, the twenty thousand dollars ($20,000) of First Mortgage Bonds of the Mapos Central Sugar Company, above assigned to me, and specified in the within receipt from said company, if same have been delivered to me, or if not so delivered, and in lieu of said delivery, then I hereby authorize and instruct my executors, heirs or assigns, to deliver to said William H. Evans, his legal representatives or assigns, the within receipt, so as to enable him to receive from said company the said $20,000 of bonds, when same have been surrendered

by the West India Sugar Finance Company of New
York City, who now hold said bonds as collateral secur-
ity from said company, and possess same for his own
use and personal property.

> " 'In witness whereof, I, the said Mrs.
> Mary Elizabeth Lipson, hereby af-
> fix my name and seal this 18th day
> of September, 1915.
>
> " ' . . . . . . . . . . . . ,        . . . . . . . . . . . . . . . . . . . . . . . .
> " ' . . . . . . . . . . . , ' "

The reasons assigned for the demurrer are: 1. That the
bill does not state any cause entitling the complainants to
relief in equity; 2. That the Court is without jurisdiction
in the premises, and 3. That the bill is vague and indefinite
in material allegations made as of the complainants' knowl-
edge.

We find no difficulty in this case by reason of the alleged
adequacy of a remedy at law, and that hence a Court of
equity should not take jurisdiction. In *Safe Deposit and
Trust Company of Baltimore, Executor,* v. *Walter Coyle,
ante,* p. 343, we had occasion to consider that question in
an analagous case and we held that a Court of equity had
jurisdiction. There the administrator of Dr. Coyle filed a
bill to require the executor of his wife to account for and
surrender a large number of bonds and stocks which it was
alleged belonged to him at the time of his death, but were
taken possession of by his widow and converted to her own
uses and purposes—or to speak more accurately, bonds and
stocks which the widow had purchased with the proceeds of
sales of those which her husband owned at the time of his
death. Amongst other authorities cited we quoted at some
length from *Scarborough* v. *Scotten,* 69 Md. 137, in support
of the right of the plaintiff to maintain the bill. We also
pointed out why such actions as trover, replevin, detinue, etc.,
did not afford complete and adequate relief, and that when the
jurisdictions of courts of law and courts of equity were con-

current the one which first took jurisdiction could proceed without being ousted by the other.

The appellant cited sec. 224 of Art. 93 (Bagby's Code) to show that there was a remedy in the Orphans' Court, if the plaintiff were entitled to relief. That section states what shall be deemed and taken for assets in the hands of an administrator, and it was doubtless an erroneous citation, but we suppose that section 243 was the one intended. We referred to that in the Coyle case mentioned above, and showed that where the title to personal property is involved that section does not apply. The letter filed with this bill shows that the appellant claims the bonds and the interest thereon.

In this case the bill in effect seeks a cancellation of the assignment of the receipt. That is a ground for equitable interposition. *Phelps' Juris. Eq.*, sec. 159; 18 *Ency. of Pl. and Pr.*, 750-752, and many authorities in this and other jurisdictions could be cited. So without discussing this branch of the case further we have no doubt about the jurisdiction of a Court of equity.

The main difficulty we find is in the allegations of the bill. We cannot tell from it the circumstances and conditions under which the appellant obtained the receipt and the assignment, although apparently they know them, and it would seem clear that the bill is demurrable for not stating them. While it is not necessary to state minutely all the circumstances which may be relied on, "All the material facts upon which reliance is placed for relief in equity must be set forth: every fact essential to the plaintiff's title to obtain relief must be stated. Such facts should be stated, generally and substantially, not minutely or in detail, as would entitle the plaintiff to the relief asked. The claim must be stated with clearness, so as to leave nothing to uncertainty, conjecture or vague inference." *Miller's Eq. Proc.*, 116-117, sec. 92, and cases cited. Or as stated in *Phelps' Jurid. Eq.*, sec. 55, "Every material fact should be stated upon which relief is sought. * * * The facts should be set forth with reasonable certainty. And facts should be stated,

not merely conclusions of law. The Court must be enabled
to see that the conclusions are well founded"—citing *Lamm
v. Burrell,* 69 Md. 272. In that case it was said: "The aver-
ments actually made are merely the *conclusions* of the pleader
from the facts within his knowledge; but those facts are not
disclosed, as they should have been, so that the Court could
see whether those conclusions were well founded in law." In
that case an injunction had been issued, and it is true that
in such cases greater particularity is required than in many
others. The prayer in this bill, set out above, is of such a
character as to require the plaintiff to clearly and fully in-
form the Court and the defendant the grounds relied on for
such relief, but it alleges that the defendant obtained posses-
sion of the receipt "under circumstances and conditions which
give her no right in the view of a Court of equity to hold the
same as against these complainants," and again, "They aver
and charge that the defendant obtained possession of said
receipt, and of said paper purporting to be (an) assignment
of the bonds mentioned in said receipt, without any considera-
tion and under circumstances which give the defendant no
title or right to said bonds or to the income or interest there-
on." As to what the circumstances were the bill is silent—
although presumably they were within the knowledge of the
plaintiffs, for otherwise they would not have been justified
in making the charge.

If it was an attempted gift "the circumstances" may in the
opinion of the Court give the defendant a right to the bonds
or the interest thereon—the Court may differ with the plain-
tiffs as to the effect of the circumstances. Or the Court might
find from them that there was a consideration which was
sufficient. In short, the Court must move in the dark
although according to the allegations of the bill the plaintiffs
have knowledge which may light its way to a just conclusion.
Even if it be conceded that the possession of the receipt, to-
gether with the assignment and reassignment, does not give
the defendant the right to the bonds or the interest thereon,
as the plaintiffs contend, it does not necessarily follow that a

Court of equity should require the surrender of the receipt and assignment. That might very well depend upon the circumstances under which the defendant obtained possession of them, but the plaintiffs are withholding information of that from the Court. It may be very material for the Court to know the circumstances in order to properly construe the assignment and reassignment. Whether or not the assignment and reassignment were executed at the same time, and at the time of the delivery of the receipt would certainly reflect upon the effect of the assignment, if the assignment is valid.

Such being our opinion in reference to the omission to state the circumstances under which the appellant obtained possession of the receipt and the assignment, we hesitate to refer to any other questions raised by the parties, as it is possible that when they are shown they may present some of the questions in a different light from what they now appear by the bill, or they may not really be involved. But it may be of assistance, if we briefly state our views as to the question of delivery, in case the appellant claims that the bonds were given to her. We are not prepared to go as far as the appellees do on that subject. This case as now presented, differs in material respects from such as *Pennington* v. *Gittings,* 2 G. & J. 208, so much relied on by the appellees. It was necessary that the stock claimed to have been given by Mr. Gittings to his daughter be transferred at the bank in order to perfect the gift. It was not the certificate, but the stock that was the subject of the intended gift. The certificate upon its face showed that the stock was transferable only at the bank, and it was admitted that an endorsement on the certificate, whether in blank or in full, was not sufficient to transfer the stock. It was therefore held that there was not a valid gift of the stock for want of delivery. So in the case of *Ward* v. *Turner,* 2 Ves. Sr. 431, referred to in *Pennington* v. *Gittings,* and particularly relied on by the appellees. The question there was whether the delivery of the receipt for annuities was sufficient as a gift *inter vivos*

and it was held it was not, but it was because "such donation could not be made without a transfer, or something equivalent, that being the only mode in which stock or annuities are susceptible of being delivered."

In this case it is not in terms stated that the bonds of the Mapos Company were negotiable instruments, but we assume that they were in the usual form of mortgage bonds issued by corporations, and hence were transferable by delivery. It would be unfortunate if an owner of bonds which have been placed in the hands of a third party as collateral security could not give them away, subject of course to the pledge, by an assignment such as this. A debtor might pledge a $1,000 bond to secure $100, or a $10,000 bond to secure $1,000, but could not give it away until he could get possession of it, if appellees' position is correct. But we can not agree with them as to the application of the authorities they cite to such circumstances as this record discloses. There is nothing in the receipt to prevent an assignment of the bonds—on the contrary the Mapos Company agreed to refund and deliver them to said Evans, *his heirs or assigns,* and he assigned to the appellant the $20,000 of bonds specified in the receipt and authorized and instructed the Mapos Company to deliver them to her or to her heirs or assigns, when they were surrendered by the West India Company (which held them as collateral) on the surrender of the receipt. The assignment apparently was under the hand and seal of Evans, and was written on the receipt.

Mr. Evans could have transferred them, subject to the lien of the pledgee, by a proper contract and upon good consideration. In such case a constructive or symbolical delivery is sufficient to pass the property. If a creditor hold a collateral note under a blank endorsement of the payee, the latter can before maturity of the note sell and assign it with the creditor's knowledge without further endorsement or without filling up the blank, and the assignee will acquire it free from all equities other than the lien of the pledgee, although it be not delivered by the latter to the assignee until after matur-

ity. *Jones on Collateral Securities* (3rd Ed.), sec. 364, citing *Whitaker* v. *Sumner,* 20 Pick. 399, and *Grimm* v. *Warner,* 45 Iowa, 106. A note already in possession of a pledgee may be again pledged by the owner to another person subject to the lien of the first pledge, without any further delivery of it. *Jones on Col. Sec.* (3rd Ed.), sec. 83. We might cite other authorities, but deem the above sufficient. There can be no valid reason assigned for not permitting an owner of pledged bonds to give them away by a proper assignment, subject of course to the lien of the pledgee and rights of creditors, when he can sell them or pledge them to another. The delivery is constructive or symbolical, and if it is a good delivery in the one case it should be in the others, as between the parties. We do not think our decisions in conflict with that conclusion and it is in conformity with the tendency of courts and legislation of modern times.

We will not discuss the effect of the reassignment, as we have already intimated that something might be shown which would reflect upon that, but independent of the reassignment our conclusion is as above stated in reference to the question of delivery.

Without prolonging this opinion further, we will reverse the order overruling the demurrer and remand the case for further proceedings.

> *Order reversed, with costs to the appellant, and cause remanded for further proceedings.*