BEVERLY W. MISTER, JOHN PHELPS, E. ALLAN
SAUERWEIN, JR., AND JOHN J. HURST, RE-
CEIVERS OF THE FARMERS TRUST, BANKING
AND DEPOSIT COMPANY,

*vs.*

J. FENTON THOMAS.

*Banking institutions: Constitution. Article 3, section 39; lia-
bility of stockholders; special charters; decree of Court,
fixing amount of liability; suit by receivers; ap-
peals. Limitations. Pleading and prac-
tice: pleas and demurrers.*

A provision in a special Act incorporating a banking and
trust company, declaring that when the par value of any share
has been all paid, the same shall thereupon become non-assess-
able and non-liable, for or on account of any purpose whatever,
does not have the effect of exempting a stockholder from the
obligations imposed by section 39 of Article 3 of the Constitu-
tion, providing that no charter for banking purposes shall be
granted except upon the condition that the stockholders shall
be liable to the amount of their respective stock for all the debts
of the banking institution.                              p. 457

Where a plea is a direct traverse of essential averments of
the declaration, a demurrer to it is properly overruled.

pp. 454-455

Where the assets of an insolvent banking corporation are
being administered by a court of equity, having jurisdiction
over the property and parties, the Court has the authority to
determine the propriety of passing an order directing the receiv-
ers to institute suits to enforce the statutory liability of the

stockholders; and such order, so passed, is binding upon the stockholders until reversed, and is not one that may be called into question in any collateral proceeding. p. 458

The Statute of Limitations begins to run against the liability of stockholders of a banking corporation only from the date of the order of a court of competent jurisdiction, fixing the amount necessary to be paid by the stockholders in a suit against them for the benefit of all the corporation's depositors and creditors. p. 459

*Decided January 15th, 1914.*

Appeal from the Circuit Court for Frederick County. (Urner, C. J., Peter and Worthington, JJ.)

The facts are stated in the opinion of the Court.

The cause was argued before Boyd, C. J., Briscoe, Burke, Thomas, Pattison, Stockbridge and Constable, JJ.

*Alexander H. Robertson* and *William S. Bryan, Jr.,* for the appellants.

*Milton G. Urner* (with whom was *George A. Pearre, Jr.,* and *Stoner & Weinberg* on the brief), for the appellees.

Burke, J., delivered the opinion of the Court.

The Farmers' Trust, Banking and Deposit Company was incorporated by the Act of 1902, Chapter 141. Its home office or place of business was located in Baltimore City. The act of incorporation provided that the capital stock of the corporation should consist of five thousand shares of the par value of $50 each, and that when the amount of $50,000 should have been subscribed and fully paid in, the corporation should be entitled to begin the prosecution of business

under its charter. The second section of the act declared that "when the par value of any share shall have been full paid, the same shall thereupon become *non-assessable* and *non-liable* for or on account of any purpose whatever."

Broad and varied powers were conferred upon the company. It was empowered to purchase and hold, bargain and sell, grant and assign lands, or any interest or estate therein, chattels, choses in action, checks, notes, bills receivable, bills payable, bills of exchange, due bills, certificates of deposit, warehouse receipts, stocks, bonds, mortgages on real estate, leasehold, and chattel property. It was empowered to guarantee the security, integrity, and income of investments in mortgages upon real or leasehold property, or chattel interest in ground rent annuities, in stocks and bonds of any State, city, county, municipality or corporation, or stock company or co-partnership, to guarantee the validity of title to real estate, leasehold or chattel property, and to guarantee the payment of credit or of any part thereof, given or extended by or to any person or persons, firm or firms. It was given the right to invest, upon such terms as may be agreed upon or established by said corporation, any sum or sums of money in any mercantile, manufacturing, commercial or other business, or in any lawful enterprises transacted or carried on, or to be transacted or carried on, in the State of Maryland, or elsewhere, in connection with any person or persons, firm or firms, or co-partnerships, corporation or joint stock companies. By the sixth section of the charter, the corporation was given the right "to receive money on deposit, evidence of debt for collection, for discount or otherwise, chattels, stocks, bonds, and all proper writing on storage or as collateral security, upon such terms as may be agreed upon or established by said company, and shall have the right to guarantee, endorse and secure the payment, punctual performance and collection of notes, debts, due bills, bills of exchange, contracts, bonds, accounts, claims, rents, securities, mortgages and interest thereon, titles to property, indebtedness of individuals, or of co-partnerships, firms, corporations, or of

joint stock companies, loans of States, cities. counties and
municipalities, upon such terms as may be agreed upon or
established by said company." It was granted the power to
act as a fiscal or transfer agent of any State, municipality.
body politic, or corporate and in such capacity to receive and
disburse money, to accept and execute trusts of any and every
description, to act as executor or administrator, receiver,
guardian, committee, etc.

Section 11 of the charter reads as follows:

"*Be it enacted,* That said corporation be subject at
all times to the provisions of the Act of eighteen hun-
dred and ninety-two, Chapters one hundred and nine
and two hundred and seventy-nine, so long as said
chapters shall respectively remain in force; provided,
that said corporation shall be subject at all times to
the provisions of the Act of eighteen hunrded and nine-
ty-two, Chapters one hundred and nine and two hun-
dred and seventy-nine, or amendments or supplements
thereto."

The amount of $50,000.00 of the par value of its stock
was subscribed and fully paid for, and thereupon the com-
pany established an office in Baltimore City, effected an
organization, and began the prosecution of the business
authorized by its charter. It sold other shares of stock at
par and received the money therefor, conducted a large busi-
ness and received large sums of money on deposit, paying the
same to its depositors on checks, and also exercised other
rights vested in it by its charter. It established branch
offices within the State for the conduct of its business—one
at Galena, called the Galena Bank; another at Darlington,
called the Darlington Bank; another at Keedysville, called
the Keedysville Bank; another at Mount Airy, called the
Mount Airy Bank, and another at Hancock, called the Wash-
ington County Bank. These several branch offices conducted
banking business in the name of the corporation and by vir-
tue of the powers conferred by its charter,

The corporation became insolvent, and a bill was filed against it in the Circuit Court No. 2 of Baltimore City by Alexander H. Robertson, a creditor of the company, alleging that it was unable to meet its obligations, and that it was utterly insolvent, and praying that a receiver be appointed to take charge of all the assets of every kind and description, properties, books, papers and accounts goods and effects of the said company, and that the corporation be declared insolvent, and that it be dissolved and its affairs wound up, and that an account of its business assets and liabilities be taken under the direction of the Court and applied to the payment of its debts and obligations, and the residue thereof, if any, distributed among the stockholders of the company.    The company appeared to the suit and filed an answer admitting its insolvency and consenting to the appointment of receivers, and on October 9, 1907, receivers were appointed as prayed.

On the twenty-third of March, 1910, the receivers—the appellants on this record, filed a petition under oath in the Circuit Court No. 2 of Baltimore City, wherein the insolvent estate was being administered, in which they recited:

"First:    That three dividends have been declared and paid by them to the creditors of the defunct trust company, aggregating eighty-eight (88) per cent. upon the gross amount of their claims, aggregating two hundred and twenty-two thousand, seven hundred and sixty-three dollars and two cents ($222,763.02), leaving a remnant of assets in the hands of your receivers.

"Second:    That this remnant of assets is very uncertain in value and its reduction to money most difficult, and your petitioners would not like to say, therefore, just what will be realized thereon; but because your petitioners do not believe that it will yield sufficient to pay the creditors dollar for dollar upon their claims, they have attempted to value the said remnant of assets, and do report the result of their attempt as follows:

"Third:    Real property carried on the books of the company at nineteen thousand, four hundred and thir-

ty-five dollars ($19,435.00), which, in the opinion of your petitioners, will not yield more than ten thousand, three hundred and seventy-five dollars ($10,375.00); two partially performed contracts of sale of real estate not yet matured, one of which is payable in installments, together carried on the books of the company at one thousand, six hundred and ninety dollars ($1,-690.00), but which your petitioners believe, if sold, will not yield more than one thousand, four hundred and fifty dollars ($1,450.00); ten uncollected mortgages carried on the books of the company at four thousand, two hundred and sixty-six dollars and eighty cents ($4,266.80), but which your petitioners believe, if sold, will not yield more than three thousand, one hundred and fifty-six dollars and eighty cents ($3,-156.80); thirteen loans of collateral security carried upon the books at eight thousand, three hundred and seventeen dollars and twenty-five cents ($8,317.25), but of which your petitioners believe they will be able to collect not more than five hundred and twenty-five dollars ($525.00); and sixty-two notes and overdrafts carried on the books at fifteen thousand, five hundred and thirty-five dollars and sixty-five cents ($15,-535.65), but of which your petitioners believe they will not be able to collect more than five thousand dollars ($5,000.00).

"Fourth: That in addition to the aforementioned assets, there is pending against the estate of John W. Woodland, deceased, formerly the president of the defunct company, a suit for losses sustained by reason of this alleged mismanagement of the said company, and there may be a further liability on the part of one or more of the officers and the directors, but the uncertainty attending the same precluded a present valuation thereon.

"Fifth: That your petitioners would have the court to understand that, while they hope to realize twenty thousand five hundred and six dollars and eighty cents ($20,506.80), from the unconverted assets as afore-

said, yet it is by no means certain that they will be
able to realize so large a sum, though, to the best of
their belief, as at present informed, said sum does
represent the real value of the said assets.

"Sixth: That it is apparent from the foregoing re-
citals, that even if the said sum of twenty thousand,
five hundred and six dollars and eighty cents ($20,-
506.80), is realized, it will not be sufficient to pay
the creditors dollar for dollar upon their claims, let
alone the interest to the depositors upon their respect-
ive deposits, in which event there may be a stockhold-
er's statutory liability.

"Seventh: That after deducting the amount ob-
tained in the three distribution accounts filed by the
receivers, there is still a balance due of the principal
of about thirty-six thousand, seven hundred and twen-
ty-one dollars and fifty-seven cents ($36,721.57), to
which should be added the interest on the whole indebt-
edness from October 9, 1907, subject to abatement by
credits from the date of final ratification of each
auditor's account. After allowing these credits, there
is a large balance due on the interest account, that is
to say, about twenty thousand dollars ($20,000.00), as
the auditor allowed no interest from October 9, 1907,
on any claim, which sum, added to the principal still
due, will make the indebtedness about fifty-six thou-
sand dollars ($56,000.00), and after deducting there-
from the amount of assets reducible to cash, less the
cost of distributing the same, will still leave a large
deficit.

"Sec. 104, of Art. 23, of the Code of 1904, amended
by the Act of 1908, Chap. 153, Sec. 85-L, subjects the
stockholders of all companies like the defendant to
the payment of its debts to the extent of their stock-
holdings, and the same becomes an asset of the cor-
poration enforceable by a receiver, assignee or trustee
of such corporation acting under an order of the court.
Wherefore they pray the court to pass an order author-
izing and directing your petitioners as receivers to

bring suit by appropriate proceedings for the purpose
of enforcing the above statutory liability against the
stockholders of the defendant company."

Upon the filing of this petition the Court ordered that the
receivers "Be and they are hereby directed to institute suits
against the stockholders of the Farmers' Trust, Banking and
Deposit Company, of Baltimore, Maryland, who would in
any way be liable for the debts of the said company. *The
suits so to be instituted to be for twenty-five per cent. of the
full amount of the stockholders' liability under the law.*
Such suits to be instituted at law or in equity as the receivers
are advised by counsel is appropriate, etc." J. Fenton
Thomas, the appellee, was the holder of twenty shares of the
capital stock of the company, and demand was made upon
him for the payment of $250.00—being twenty-five per cent.
of its par value—which amount he refused to pay.

The receivers instituted suit against him in the Circuit
Court for Frederick County to recover that sum. The dec-
laration set out in full the act of incorporation of the insol-
vent company; that it had duly organized and began the
prosecution of its business under its charter; that the plain-
tiffs were the receivers of the company appointed by orders
passed in the case instituted by Mr. Robertson against the
company on the ninth of October, 1907, referred to above;
that

"on the twenty-third of March, 1910, in the proceed-
ings in the above-mentioned case of *Robertson* v. *the
Farmers' Trust, Banking and Deposit Company,* the
Circuit Court No. 2 of Baltimore City ordered and
directed that Beverly W. Mister, John Phelps, E. Al-
len Sauerwein, Jr., and John J. Hurst, receivers of the
Farmers' Trust, Banking and Deposit Company,
should by appropriate proceedings enforce the statu-
tory liability of the stockholders of the said Farmers'
Trust, Banking and Deposit Company to pay an
amount to said receivers equal to twenty-five per cent.

of the par value of the stock of said company held by
them respectively—the same being by said order ad-
judged necessary to pay the debts of said Farmers'
Trust, Banking and Deposit Company."

The declaration further alleged that the defendant, being
the owner or holder of twenty shares of the stock of the
Farmers' Trust, Banking and Deposit Company, there was
due by him to the plaintiffs the sum of $250.00, with interest
thereon from the twenty-third of March, 1910. The defend-
ant appeared and filed the general issue pleas and a plea of
limitation. These pleas were withdrawn by leave of the
Court and a demurrer to the *narr.* was filed. The demurrer
was overruled. The defendant re-filed the pleas which he
had withdrawn, together with a plea of payment. The plain-
tiffs joined issue upon the general issue pleas and traversed
the plea of payment and limitation. Upon leave granted the
defendant filed additional pleas, which are here transcribed:

"5. That at the time of the said Farmers' Trust,
Banking and Deposit Company, a body corporate,
ceased to do business, and when the plaintiffs in this
case were appointed receivers therefor as alleged in
the plaintiffs' declaration, the said corporation owned
and had in possession assets convertible into cash, other
than any stockholder's liability, of greater value and'
amount than the amount of all contracts, debts and
engagements of said Farmers' Trust, Banking and De-
posit Company then existing, and it was not necessary
to make any assessment upon the stockholders of said
corporation to pay and satisfy all the contracts, debts
and engagements of said corporation.

"6. That the plaintiffs as receivers, after their ap-
pointment as such receivers, collected in funds from
the assets of said corporation that came into their
hands as such receivers, exclusively of any stockhold-
ers' liability, an amount of money greater than the
amount owing by said corporation at the time of the
appointment of said receivers upon the contracts, debts
and engagements of said corporation then existing.

"7.  That the order of the Circuit Court No. 2 of
Baltimore City, passed on the 23rd day of March,
1910, and mentioned in the plaintiffs' declaration, was
passed upon the *ex parte* petition of the said receivers
and without any notice to or knowledge by this defend-
ant, and without the said Circuit Court No. 2 having
first judicially determined as to what amount, if any,
it was necessary for said receivers to collect from the
stockholders in order to pay and satisfy all the con-
tracts, debts, and engagements of said corporation.
And so this defendant says that the said Circuit Court
No. 2 of Baltimore City had no jurisdiction to pass
the said order of March 23, 1910, at the time the same
was passed.

"8.  That at the time of the passage of said order
of March 23, 1910, by the said Circuit Court No. 2
of Baltimore City, the said receivers had not collected
and reduced into cash all of the assets of said corpora-
tion in their hands that were collectible, but still had a
large amount of collectible assets of the said corpora-
tion in their hands uncollected, other than any stock-
holders' liability, to wit, an amount approximating
the sum of $50,000.00."

To each of these pleas the plaintiffs demurred, and the
Court sustained the demurrers.  The defendant then filed the
following additional plea:

"9.  That the Circuit Court No. 2 of Baltimore
City, by its order of March 23, 1910, mentioned in
the plaintiffs' declaration, did not adjudge and judi-
cially determine that 25% of the par value of the
stock of said Farmers' Trust, Banking and Deposit
Company held by the stockholders thereof respectively,
was necessary to pay the debts of said company, as
alleged in said declaration."

A demurrer interposed by the plaintiffs to this plea was
overruled, and issue was joined upon it.  As the plea was a
direct traverse of essential averments of the declaration, the

demurrer was properly overruled.  A jury was empannelled
and the case proceeded to trial.  The plaintiffs offered evi-
dence tending to prove that since August 15, 1902, the appel-
lee had been the holder of twenty shares of the capital stock
of the Farmers' Trust, Banking and Deposit Company, and
that the same had been standing in his name on the books
of the company.  They also offered in evidence a certified
copy of the docket entries and the original papers in the case
of *Alexander H. Robertson* v. *Farmers' Trust, Banking and
Deposit Company* in Circuit Court No. 2 of Baltimore City,
and the order appointing receivers for the company, and
also the petition of the receivers and the order of Court there-
on of March 23, 1910, hereinabove set forth.  It was ad-
mitted that before suit was brought, demand had been made
by the plaintiffs upon the defendant to pay to them the sum
of two hundred and fifty dollars ($250.00), for which this
suit was brought, and that such demand had been refused.
The plaintiffs then closed their case, and thereupon the de-
fendant offered three prayers as follows:

First.  "The defendant prays the Court to instruct the jury
that, under the pleadings and evidence in this case, the plain-
tiffs have offered no evidence legally sufficient to entitle the
plaintiffs to recover, and the verdict of the jury must be for
the defendant.

Second.  "The defendant prays the Court to instruct the
jury that, under the issues joined on the ninth plea of de-
fendant's, there is no legally sufficient evidence to entitle
the plaintiffs to recover, and their verdict should be for the
defendant.

Third.  "The defendant prays the Court to instruct the
jury that, under the pleadings and evidence in this case, the
plaintiffs are not entitled to recover, because the plaintiffs'
cause of action accrued more than three years before the
bringing of this suit, and that there is in this case no evi-
dence legally sufficient to prove any new promise, or acknowl-
edgment of the plaintiffs' claim sufficient to remove the bar
of the Statute of Limitations set up by the defendant's fourth

plea, and, therefore, the verdict of the jury must be for the defendant."

The Court granted the defendant's first and second prayers, to which action the plaintiffs excepted, and from the judgment entered for the defendant for costs, they have prosecuted this appeal. The defendant excepted to the action of the Court in rejecting his third prayer, and the Court, in pursuance of Article 11, sections 76 to 78, inclusive, of the Public Local Laws of Frederick County, has certified the exception as a part of the transcript of record.

Upon this state of facts the three controlling questions which arise are: Is the defendant, as a stockholder of the insolvent company, subject to the stockholders' statutory liability which this suit seeks to enforce against him? What is the legal force and effect of the order of the twenty-third of March, 1910, quoted above, passed by the Circuit Court No. 2 of Baltimore City, upon the petition of the receivers? Is the plea of limitation available as a defense in this action? The first question arises under the demurrer to the declaration and under the two granted prayers of the defendant.

Section 39, Article 3, of the Constitution declares that: "The General Assembly shall grant no charter for banking purposes, nor renew any banking corporation now in existence, except upon the condition that the stockholders shall be liable to the amount of their respective share or shares of stock in such banking institution, for all its debts and liabilities upon note, bill, or otherwise, etc."

When the charter of the insolvent company was granted, the Act of 1892, Chapter 109, which related to safe deposit, trust, guaranty, loan and fidelity companies or associations incorporated under any law of this or any other State, etc., was in force. Section 85 L of that Act provided that: "Every stockholder shall be liable to the depositors and creditors of any such corporation for *double* the amount of stock at the par value held by such stockholder in such corporation."

Prior to the Act of 1904, Chapter 101 (Code 1912, Art. 23, sec. 116), the remedy for the enforcement of this statu-

tory liability was by suits against individual stockholders by individual creditors. That act effected a change both as to the amount of liability and the remedy for its enforcement. It declared that: "The stockholders of every such corporation shall be held liable equally and ratably, and not one for another, on all contracts, debts, and engagements of every such corporation to the *extent of the amount* of their stock therein at the face value thereof, in addition to the amount invested in such stock, * * * and the liability of such stockholders shall be an asset of the corporation for the benefit ratably of all the depositors and creditors of any such corporation, *if necessary*, to pay the debts of such corporation, and shall be enforceable only by appropriate proceedings by a receiver, assignee, or trustee of such corporation acting under the orders of a Court of competent jurisdiction, etc." It is apparent from its charter that the Farmers' Trust, Banking and Deposit Company is embraced in that class of corporations upon whose stockholders the acts mentioned imposed a statutory liability, and the defendant in this suit cannot escape that liability: First, because the General Assembly by the charter of the insolvent company had granted to it the powers to do a banking business. It was not, therefore, within the power of the Legislature to have exempted the stockholders of such a corporation from the obligations imposed by section 39, Article 3 of the Constitution.

But aside from this, we do not find in the charter of the company any intention of the Legislature to exempt the stockholders from this liability. The defendant contends that such an exemption is found in section 2 of the charter. It is difficult to say with certainty what was meant by the language used in that section; but we do not think it should control or override the clear and positive language used in section 11 of the charter.

The Circuit Court No. 2 of Baltimore City had jurisdiction of the company and of its assets. They were being administered in that Court. The statutory liability of the stockholders, if necessary, to pay the debts of the corporation was

to be treated as an asset of the corporation and enforced by the receivers under the orders of that Court. It had jurisdiction to determine the propriety of passing such orders, and any order passed in relation to that matter was binding upon the stockholders. This is clearly settled in *Glenn* v. *Williams,* 60 Md. 93, and the cases therein cited. The order of March 23, 1910, not only directed suits to be brought by the receivers against the stockholders, but it fixed the precise per cent. of the par value of stock for which suits should be brought. The suits were ordered to be instituted "for twenty-five per cent. of the full amount of the stockholders' liability under the law." This decree or order was passed by a Court of competent jurisdiction and was binding upon the defendant and all the other stockholders of the company. No appeal was taken from it, and it remains unaltered and in full force. It cannot be assailed upon any of the grounds relied upon in the defendant's 5th, 6th, 7th and 8th pleas. With respect to the issue made by the 9th plea, it need only be said that the question of the necessity for passing the order of March 23, 1910, was submitted for the consideration of the Court by the petition of the receivers, and the passing of the order necessarily involved a determination by the Court that it was necessary to pass it. It undoubtedly had the power to decide that question, and having decided it, its adjudication cannot be collaterally questioned, even though it may have improvidently or mistakenly exercised its power. Such errors could only have been corrected by a direct appeal to this Court from the order.

"A judgment or decree of a Court having jurisdiction of the subject and the parties cannot be re-examined by the same parties or their privies in another suit. It is conclusive upon them of all questions put in issue by the pleadings. *Whitehurst* v. *Rogers,* 38 Md. 503; *State* v. *Brown,* 64 Md. 199; *Hill* v. *McConnell,* 106 Md. 574. Nor can the decree of judgment be re-examined in the same Court except upon some direct proceedings instituted for that purpose. Until set aside by the Court which rendered it, or reversed upon

appeal, the judgment or decree is final and conclusive of the questions decided. *Emmert* v. *Middlekauff,* 118 Md. 399."

With regard to the plea of limitation, only a word need be said. The obligation of the defendant to pay, accrued on March 23, 1910,—the date of the order. The statutory liability is declared to be an *asset* of the corporation for the benefit ratably of all its depositors and creditors, *if necessary,* to pay the debts of the corporation. Manifestly there is no obligation upon the stockholder to pay anything until the amount he is required to pay has been determined by an order of a Court of competent jurisdiction. No matter what the rule may be in other jurisdictions, the reasonable and just rule to be applied to cases of this nature is, that the Statute of Limitations begins to run only from the date of the order fixing the amount to be paid by the stockholder. There is no good reason why the rule applied in *Glenn* v. *Williams, supra,* is not applicable to this case.

We, therefore, hold that the appellee, as a stockholder of the Farmers' Trust, Banking and Deposit Company, is subject to the stockholders' liability which is sought to be enforced in this suit; that the order of March 23, 1910, quoted above, is a valid order, and conclusive and binding upon the defendant; and that the Statute of Limitations does not constitute a bar to this suit. It follows that there was no error in overruling the demurrer to the declaration and to the 9th plea, or in sustaining the demurrers to the 5th, 6th, 7th and 8th pleas, or in refusing the defendant's third prayer. But there was error in granting the defendant's first and second prayers, and because of this error the judgment will be reversed and a new trial awarded.

> *Judgment reversed, and a new trial awarded,*
> *the appellee to pay the costs.*