# MARY ELIZABETH LIPSON.

### *vs.*

## CHARLES R. EVANS AND SAMUEL S. FIELD, EXECUTORS OF WILLIAM H. EVANS, DECEASED.

*Demurrer in Equity—Production of Receipt—Undue influence.*

Where a bill seeking the production and surrender of a certain receipt on the ground that its possession by the defendant and the endorsements thereon constitute a cloud on the complainants' title, a demurrer does not admit the legal construction placed by the bill on the endorsements as involving merely a conditional donation, to take effect only on the donor's death.      p. 133

An allegation in the bill, charging that a certain receipt was obtained by defendant from plaintiffs' decedent, a man seventy-five years of age, without any consideration, and solely as the result of the influence which she had acquired over said decedent, with whom she maintained illicit relations, *held* sufficient to give a court of equity jurisdiction.      p. 134

*Decided November 13th, 1919.*

Appeal from the Circuit Court of Baltimore City (GORTER, J.).

The cause was argued before BOYD, C. J., BURKE, THOMAS, PATTISON, URNER, STOCKBRIDGE and ADKINS, JJ.

*Eldridge Hood Young,* with whom was *George D. Dean* on the brief, for the appellant.

*S. S. Field,* for the appellees.

BURKE, J., delivered the opinion of the Court.

This is the second appeal in this case. The first appeal was from an order of the lower Court overruling a demurrer to the bill of complaint. The order was reversed and the cause remanded for further proceedings. The case is reported in 133 Md. 370. Thereafter, by leave of Court, the plaintiffs filed an amended bill to which the defendant demurred. The Court overruled the demurrer, and this appeal is taken by the defendant from that order. The demurrer admits the facts which are well pleaded. Those facts substantially are as follows: William H. Evans, a resident of Baltimore City, died in January, 1917, leaving a last will and testament by which he appointed the plaintiffs in this suit his executors and they duly qualified. He left surviving him a widow and two children, and two grandchildren. About the year 1890 the defendant was employed for some months as a domestic in the house of said deceased. She left the service of William H. Evans, and was absent for about six years, and in 1906 she returned and was again employed as a domestic in his home. When first employed her name was Mary Elizabeth Myers; upon her return she gave her name as Mary Elizabeth Lipson, saying she had married a man named Lipson, who had died. She then had two little boys who, she stated, were the children of herself and the said Lipson.

In 1909 Wilhelmina H. C. Evans, the wife of William H. Evans, received information to the effect that sexual intimacy existed between said Evans and the defendant. The plaintiffs have no knowledge as to when this illicit relation began, but they charge "upon information and belief they aver that from a period as far back as 1909 and thence continuously down to the time of his death, the defendant occupied towards the said William H. Evans the position of mistress, and the said defendant was guilty of relations with the said William H. Evans which were illicit on her part and adulterous on his part."

During his lifetime, William H. Evans became the owner
of a large amount of bonds of the Mapos Central Sugar Com-
pany, a corporation of the State of Delaware, whose secre-
tary and treasurer is a resident of Philadelphia where his
office is located, and said company has no officer or resident
agent in this State.

On August 19th, 1915, William H. Evans loaned to the
Mapos Central Sugar Company bonds of said company to the
amount of $126,000 par value for the purpose of permitting
said company to pledge said bonds to the West India Finance
Company of New York as collateral security for loans to said
sugar company, which gave four receipts aggregating $126,-
000.00 par value to said Evans. One of these receipts was
for $20,000.

After the death of William H. Evans, the plaintiffs found
all of these receipts among his effects, except the receipt for
$20,000 par value of said bonds. They thereupon made in-
quiry of the secretary and treasurer of the sugar company as
to the missing receipt, and were informed by him that all
four of said receipts had been mailed to William H. Evans,
and inclosed a copy of a letter from him of August 28th,
1915, acknowledging receipt of said receipts. On June 1,
1917, the plaintiffs were informed by the secretary of the
sugar company that the defendant had made formal demand
upon him "for the coupons of these bonds as they mature and
has sent me a copy made by her or her son of the receipt
given by the Mapos Central Sugar Company and endorse-
ments thereon." A copy of these papers was sent to the plain-
tiffs and by which it appeared that the body of a receipt
from the Mapos Sugar Company to William H. Evans for
Mapos bonds par value $20,000, dated August 19, 1915, and
the body of two endorsements, both dated September 18,
1915, upon said receipt, were enclosed in a letter of March
13, 1917, from the defendant to the secretary of the company.
The copy of defendant's letter, and of the receipt for the
bonds and two assignments, dated September 18, 1915, en-

dorsed upon the receipt, one an assignment from Evans to the defendant and one a re-assignment, upon certain contingencies from the defendant to Evans, are set out in full in the opinion in *Lipson* v. *Evans,* 133 Md. 373, and, therefore, need not be herein inserted.

The receipt is a copy, except the signature of the original receipt given by the Mapos Sugar Company to William H. Evans for said $20,000 par value of Mapos bonds, and said receipt was duly signed by the sugar company, and is now in the possession of the defendant, but the plaintiffs do not know whether the endorsements thereon were signed by said Evans.

In the fifth paragraph of the bill it is alleged:

"That assuming said endorsements on the back of said receipt to have been signed and sealed by the said William H. Evans and the said defendant, respectively, then your orators aver that the legal interpretation or meaning of said endorsements is an attempt on the part of the said William H. Evans to make a conditional donation of said bonds to the said defendant, to take effect upon his death, provided he should die before the said bonds should be returned by the Mapos Central Sugar Company to which he had loaned them for the purpose aforesaid; and that it was the meaning and effect of the two endorsements and the purpose and intention of the parties that the defendant should have no interest in said bonds or right or title to them during the lifetime of said William H. Evans, and that if they should be returned by the said Mapos Central Sugar Company during the lifetime of the said William H. Evans, that they should continue to be the property of the said William H. Evans.

"And your orators, upon information and belief, aver that the title to said bonds remained in the said William H. Evans up to the time of his death, and upon the appointment and qualification of your orators as his executors, devolved upon them, and the title to said bonds is now in your orators, and that the possession by the defendant of the receipt and the endorsements thereon, as above mentioned, is a cloud upon the title

of your orators to said bonds and an obstacle to your
orators receiving from the Mapos Central Sugar Com-
pany the said bonds when they may be returned to said
company and be ready for redelivery, and in the mean-
time prevents your orators from receiving the income
or interest upon said bonds to which they are justly
entitled."

The demurrer does not admit the legal construction placed
by the plaintiffs upon the endorsements.

The bonds were pledged by the Sugar Company to the
West India Finance Company and that company still holds
possession of them. After the date of said endorsements
three semi-annual instalments of interest upon said bonds—
the same being coupon bonds payable to bearer—were paid
to William H. Evans. The defendant never made any claim
to said coupons or of title to the bonds until after the death
of said Evans. It is alleged: "That the said attempted gift
of said bonds by the said William H. Evans to the defendant
conditionally upon his death, before the return of said bonds
by the said Mapos Company, and to take effect after his
death, was imperfect, invalid, testamentary in its nature, and
conferred no right or title to said bonds upon the defendant."
We now quote the allegation of the bill as to the time and
circumstances under which the receipt was delivered to the
defendant and the endorsements made thereon:

"8.    That your orators have no knowledge or infor-
mation of the time or circumstances under which the
defendant obtained possession of said receipt except the
fact hereinabove set out as to the relation between the
defendant and the said William H. Evans, and the fact
as indicated by the letter from the defendant to Charles
Heebner of March 13, 1917, and the copies enclosed
with said letters; and the further fact that no claim
was made upon the Mapos Company for the income
on said bonds or claim of title to the said bonds dur-
ing the lifetime of the said William H. Evans, and,
therefore, they are unable to state whether or not the

said receipt was intentionally delivered by the said William H. Evans to the defendant, but upon information which they have, and supposing the endorsement to have been signed, they aver that the signing of said endorsement and the obtaining possession of said receipt by said defendant, took place at the same time and all as parts of one transaction.

"9. Your orators, further upon information and belief aver; that the defendant by means of the illicit relation aforesaid between herself and the said William H. Evans, obtained and maintained a great influence over the said William H. Evans which he was unable to resist; that he repeatedly declared his intention of breaking off the illicit relations with the said defendant, but did not do so.

"That at the date of the endorsement upon said receipt, to wit, September 18, 1915, the said William H. Evans was a man 75 years of age, and your orators, upon information and belief, aver that the said defendant obtained possession of said receipt without any consideration either valuable or good moving from her or to the said William H. Evans, and solely as the result of the influence which she had acquired over the said William H. Evans, and which he was unable to resist."

"11. Your orators further aver that they have no information as to the circumstances under which the defendant obtained possession of said receipt, or as to the endorsement thereupon, or whether or not said endorsements were signed by the said William H. Evans and the said defendant, respectively, except as hereinabove set out; that they have asked counsel for the defendant to permit counsel for your orators to inspect the said paper and the endorsements thereon in order that counsel for your orators may be in a position to make more definite allegations in regard to the execution *vel non* of the endorsements upon said receipt, and counsel for appellant have declined to permit counsel for your orators to inspect said paper and said endorsements, and the same being in their possession, they cannot in any way be prejudiced by the failure of your

orators to make more definite allegations in reference
to the execution *vel non* of the said endorsement on said
receipt."

The tenth paragraph sets out the following legal construction of the first endorsement:

"Your orators, further upon information and belief,
aver that the legal effect of the first endorsement upon
said receipt, supposing it to have been signed and de-
livered by the said William H. Evans, was simply an
order to the Mapos Central Sugar Company to deliver
the bonds mentioned in said receipt to the said defend-
ant when they should be released by the pledges thereof
to the Mapos Central Sugar Company and the latter
company be in a position to return them. That they
never were released by said pledge during the lifetime
of the said William H. Evans, and therefore the order
never became effective during the lifetime of the said
William H. Evans; that there was no attempt on the
part of the defendant to perfect said order by any
notice to or acceptance by the Mapos Central Sugar
Company during the lifetime of the said William H.
Evans, and that the said order or authority to the said
Mapos Central Sugar Company to deliver the said
bonds to the defendant was revoked by the death of the
said William H. Evans."

The prayers of the bill are: *First,* that the defendant may
be required to bring into Court, to be surrendered to the com-
plainants, the receipt for said bonds; *secondly,* that she may
be required to surrender to the complainants the paper writ-
ing purporting to be an assignment of said bonds to her; and
*thirdly,* for further relief.

In 1 *Poe on Pleading & Practice,* 4th Ed., sec. 705, it is
said that, "technically, a demurrer is an admission of the
truth of the facts alleged in the opposite pleading, but a de-
nial that the facts thus admitted constitute a good ground of
action or defense. By this it is not to be understood that
everything contained in the pleading demurred to, no matter

what be its character, is admitted to be true, but only that the effect of the demurrer is to concede such matters *of fact as are issuable and well pleaded.* Accordingly, if facts are pleaded which are insufficient in substance or immaterial, they are not admitted by the demurrer to be true. Nor does a demurrer admit matters that are impossible or matters which the opposite party, upon the face of the pleadings, is estopped to allege, or matters which make a departure, or matters of law or conclusions which counsel may draw from the facts stated, even when such conclusions are set out in the pleading; or matters of inference and argument, however clearly stated." This rule we think is particularly applicable to this case, where it appears from the allegations of the bill that the plaintiffs have no knowledge as to the circumstances under which the assignment were made and, in the absence of the facts and circumstances attending the assignments, the Court is not in a position to discuss or pass upon their legal effect.

The ninth paragraph of the bill, which we have set out, charges that the defendant obtained possession of said receipt without any consideration and solely as the result of the influence which she had acquired over the said William H. Evans and which he was unable to resist. Allegations contained in this paragraph—which did not appear in the original bill—we regard as sufficient to give the court of equity jurisdiction to inquire into the delivery of the receipt by Evans to the defendant. *Davis* v. *Calvert,* 5 G. & J. 269; *Higgins* v. *Carlton,* 28 Md. 125; *Stirling* v. *Stirling,* 64 Md. 138, and many other cases dealing with the question of undue influence, and we rest our affirmation of the order appealed from upon this ground. When all the facts and circumstances attending the delivery of the receipt and the execution of the assignment and re-assignment are before the Court, it will then be able to pass upon all the questions presented by the bill.

*Order affirmed, with costs.*