FRED W. LANGE ET AL. *v.* JOHN J. GHINGHER, RECEIVER

[Nos. 53, 54, January Term, 1935.]

*Decided April 3rd, 1935.*

The causes were argued before BOND, C. J., URNER, PARKE, SLOAN, SHEHAN, and JOHNSON, JJ.

*Isaac Lobe Straus,* for the appellants.

*Stuart S. Janney* and *Robert Stinson,* for the appellees.

JOHNSON, J., delivered the opinion of the Court.

On August 10th, 1933, John J. Ghingher, bank commissioner, was appointed receiver for the American Trust Company, a banking institution incorporated under the laws of Maryland, with 10,000 shares of stock of the par value of $50 each, authorized, issued, and outstanding, In the latter part of the year 1930, due to the general decline in the value of securities, the institution's inability to continue business without financial assistance from outside sources became apparent, and in December of that year, at a special meeting of its directors, the executive committee was authorized to place its financial status before the Union Trust Company of Maryland, with a view to having the latter institution take over its management and guarantee its deposits, and, in the event of its failure to do so, to place its situation before the State bank commissioner. Shortly thereafter, on December 12th, 1930, at the instance of the Union Trust Company of Maryland, a meeting of the Clearing House Association of Baltimore City was held, at which sixteen Baltimore banks were represented, and the condition of the American Trust Company was explained and considered. From the minutes of that meeting, the following is quoted:

"Mr. Newcomer outlined the situation regarding the American Trust Company as considered at the previous meeting of the Executive Committee, showing deposits of the Company, according to examinations made by the Union Trust Company, was impaired to the extent of approximately $118,000. Mr. Graham Boyce spoke for the Union Trust Company, and explained their interest in the matter, and that his Company was unwilling to fix any definite figure as a maximum loss in liquidating the American Trust Company. His proposal was that the Clearing House guarantee to make up any eventual loss after liquidation, and after exhausting the possibilities of the directors' guarantee, and the possibility of enforcing the stockholders' liability. After considerable discussion of the matter, Mr. Symington made the following motion, seconded by Mr. Crowther; Resolved, That the Clearing

House members and such other banks as may agree to participate, guarantee in proportion as each bank's capital and surplus bears to the total capital and surplus of the participating banks, the shortage arising from liquidation of deposits of the American Trust Company by the Union Trust Company, the entire assets of the American Trust Company to be in discretionary control of the committee of the Clearing House to be appointed by the President.

"On roll-call vote, this motion was carried unanimously, the Fidelity Trust Company and the Title Guarantee and Trust Company agreeing to participate in amount of their proportion."

Later, on the same day, the following agreement between the directors of the American Trust Company and the Union Trust Company was made:

"This Agreement, made this 12th day of December, 1930, by and between the Union Trust Company of Maryland, party of the first part, and John J. Reahl, Alfred S. Day, George W. Bahlke, L. Irving Pollitt, William Cook, Samuel E. Egerton, Jr., Walter Scott, Jacob R. Pfeiffer, Walter A. Cox, George R. Gorsuch, Thomas Donohue, Richard C. Wells, John M. Miller, F. O. Scherf, Charles M. Trueheart, R. W. Bay, M. D., R. J. Mitchell, James F. Thrift, Ernest E. Wooden, T. E. Witters and Charles R. Whiteford, individually, directors of the American Trust Company of Baltimore, Maryland, parties of the second part.

"Whereas, the Union Trust Company of Maryland is willing to take over the management of the American Trust Company and to assume its liabilities, provided it is hereby understood that said Trust Company is subrogated to any remedies creditors may have against its Directors or Stockholders.

"Whereas, the undersigned Directors are desirous of said Trust Company assuming said liabilities.

"Now this agreement witnesseth, that in consideration of the premises and the payment of ten dollars ($10.00), receipt of which is hereby acknowledged, the said parties

of the second part hereby jointly and severally agree to indemnify and hold harmless the Union Trust Company of Maryland, its successors and assigns, from and against any and all loss resulting from its assuming said liabilities, said loss, if any, to be determined by the sale or liquidation of the assets of said Trust Company and the payment of its liabilities.

"As Witness the signature of the party of the first part by——————— its Vice-President, with its corporate seal hereto affixed duly attested; and witness also the hands and seals of the parties of the second part.

"Union Trust Company of Maryland,

"By W. Graham Boyce, Vice-President."

Then follow the signatures of the directors of the American Trust Company.

On the next day the Union Trust Company announced through the newspapers that it had assumed the management of the American Trust Company and guaranteed its deposits, and that business would be conducted by the American Trust Company at its then location as theretofore.

Certain officers of the Union Trust Company were elected to offices in the American Trust Company, and thereafter its business went along normally until the bank holiday in February, 1933, at the expiration of which neither the Union Trust Company nor the American Trust Company was permitted to open without restriction, and a conservator was later appointed for the latter institution.

On August 24th, 1933, upon the receiver's petition alleging that the deficiency of the assets of the American Trust Company was in excess of its capital, namely $500,-000, to which petition was attached a statement showing an appraisal of the institution's assets revealing a deficit of $518,034.71, an order was passed directing the receiver to enforce the stockholders' liability. The receiver later petitioned the court, stating that the directors of the American Trust Company who had joined in the guaranty agreement owned 2,351 shares of stock having a par

value of $117,550, and he was advised that the most he could expect to collect from them on account of their stock liability was less than $60,000, and it would be difficult, if not impossible, to enforce their liability under the guaranty agreement, and that they had agreed with the Union Trust Company, prior to the receivership proceedings, to settle their stock liability and their liability under the agreement by turning over to him cash and securities aggregating $123,400, which settlement was recommended by the receiver as being advantageous to the estate and was consented to by the Union Trust Company and approved by the court.

Appellants then intervened and in a petition recited the facts above stated, claiming further that the American Trust Company had, since December, 1930, been under the active management and control of the Union Trust Company and Clearing House Association, and that since the amount collected by the receiver from certain stockholders and directors of the American Trust Company, under their agreement hereinbefore referred to, was in excess of the deficit on December 12th, 1930, there was no further liability upon the part of the American Trust Company's stockholders, and in any event they were only liable for the original deficiency of $118,000 existing on said date, the remainder of which deficit should be enforced by the receiver against the Union Trust Company and said Clearing House Association. The chancellor thereupon stayed his original order, directing the receiver to enforce the statutory liability of the remaining stockholders of the American Trust Company, and further directed him to ascertain the nature of the liability of the Union Trust Company and the Clearing House Association of Baltimore City, and enforce such liability and report to the court from time to time his progress in respect thereto. This, however, was later rescinded by the court, after the receiver had filed a report containing a proposition of settlement between certain banks and the Union Trust Company, which will now be referred to.

This report, which included a recital of the undertaking between the various member banks of the Clearing House Association of Baltimore City and the Union Trust Company hereinbefore set forth, also showed that the Union Trust Company had given public notice of its assumption of the management and guarantee of the deposits of the American Trust Company. The receiver stated he had been advised by counsel that liability of said banking institutions to the Union Trust Company was several and not joint; that the corporate organization of the American Trust Company was at all times maintained and the position of the Union Trust Company as a creditor for all sums advanced was likewise maintained and evidenced by promissory notes then in the possession of the Union Trust Company of Maryland.

On December 12th, 1930, the Union Trust Company was a creditor of the American Trust Company in the amount of $542,100, as of which time the latter company's deposits amounted to $1,093,474.72. On March 4th, 1933, during the bank holiday, the deposits of the American Trust Company had been reduced to $460,465.06, of which $76,779.08 represented a deposit of the Union Trust Company. The Union Trust Company was not permitted to open without restriction at the expiration of the bank holiday, and was reorganized under a plan whereby it paid its depositors twenty-four per cent. in cash and issued certificates for the remaining seventy-six per cent. It was further shown that, of the banking institutions that attended the meeting at which the guaranty agreement was discussed, 44.64 per cent. were closed or in process of liquidation after the bank holiday, and that their ability to perform their agreement was thereby destroyed, but that a settlement had been proposed whereby all the institutions affected would contribute the sum of $172,622.-16 to the Union Trust Company in full settlement of their liability under the above agreement, which money was to be turned over to the receiver of the American Trust Company, together with the sum of $32,318, which was the amount due by the Union Trust Company under the

agreement, and that the Union Trust Company was to waive its claim until all of the creditors had been paid in full, upon the understanding that it was to be subrogated to the rights of the creditors to the extent of the payments made by it to the receiver.

The receiver strongly recommended such settlement, and on November 1st,. 1934, the chancellor approved the same, unless cause were shown to the contrary within twenty days, and made provision for giving notice thereof to the depositors of the American Trust Company within said period. Exceptions were filed by appellants, and overruled on December 4th, at which time the order of settlement thus proposed was made final, and this gives rise to the first of these appeals.

Shortly after the petition on behalf of appellants, previously referred to, had been filed, the receiver demurred to the same, but by leave of court was permitted to withdraw his demurrer and to file a demurrer and amended answer, to which amended answer appellants demurred, and the chancellor, on November 21st, 1934, overruled their demurrer to the receiver's amended answer and sustained the receiver's demurrer to their petition, with leave to them to amend within five days, and upon their failure to do so the court, on December 20th, 1934, dismissed the petition, and its action in respect thereto forms the basis of the second appeal.

Since both appeals are determinable by the same law and facts, they may, with convenience, be considered together. An important question underlying both of them relates to the liability of appellants as stockholders of the American Trust Company, under section 72 of article 11 of the Code.

Appellants contend that the legal effect of the taking over by the Union Trust Company of the management of the American Trust Company's affairs under the agreement with its directors, and the further agreement of the fifteen member banks of the Clearing House Association to share the shortage arising from liquidation of American Trust Company's deposits upon the terms mentioned,

was to indemnify only depositors, without regard to subrogation in favor of Union Trust Company, yet it is admitted that from December 12th, 1930, until the close of the bank holiday in March, 1933, the officers of the American Trust Company were from time to time elected by its stockholders; that for the advances made by the Union Trust Company to enable the American Trust Company to pay depositors, notes of the latter company were given it as such advances were made. They now object because no effort was made toward liquidation during this period, within which the deficit increased from $118,000 to above $500,000. Undoubtedly, in the light of events that have transpired, much money was lost by attempting to maintain the American Trust Company as a going concern, but does it follow that the loss is chargeable to the Union Trust Company and co-operating banks? We may assume that, had this result been foreseen by the stockholders of the American Trust Company, they would have chosen other officials, who were in favor of liquidating its assets as rapidly as possible. There is nothing in any of the agreements referred to or in the proceedings which negatives the idea that the Union Trust Company was to be subrogated to the rights of creditors of the American Trust Company whom it was paying, but, on the contrary, the indemnity of the fifteen banks to the Union Trust Company, the agreement of the latter with the American Trust Company's directors, and the proposition of settlement relating thereto, which was ratified by the court, specifically recognized such subrogation.

In the case of *Hightower v. American National Bank of Macon*, 263 U. S. 351, 44 S. Ct. 123, 68 L. Ed. 334, an agreement was entered into by the Commercial National Bank and the American National Bank of Macon, Georgia, under which all the assets of the Commercial Bank were transferred to the American National Bank, which agreed to liquidate the assets, pay the liabilities, and account for the balance to the shareholders, without compensation for its services. The contract provided that neither the directors' resolutions nor the contract "shall

relieve the shareholders from their legal liabilities as shareholders to respond." A deficit remained after liquidation of the assets, and the American National Bank sued the Commercial Bank and its stockholders to recover this deficit. It was contended by the stockholders that the transfer of assets was not as security, but was an outright sale in consideration of an unqualified assumption of the liabilities; also that the debt sought to be enforced was created during the process of liquidation and was not therefore one for which the stockholders were liable. The United States Supreme Court overruled both of these contentions, and held that the American National Bank had a claim for the deficit which it would enforce against the stockholders.

Also in the case of *Wyman v. Wallace*, 201 U. S. 230, 26 S. Ct. 495, 50 L. Ed. 738, the American National Bank of Omaha paid off the immediate obligations of the Union Bank of Omaha, assumed its other obligations, took good assets for part of the money it advanced, and notes secured by other assets for the remainder. The court held that the stockholders of the Union Bank could be assessed to obtain payment of the notes held by the American National Bank, since they constituted valid obligations of the Union Bank and its assets were insufficient to pay them. See, also, *Hays v. Wilkinson* (C. C. A.) 72 Fed. (2nd) 201.

The compromise settlement to which appellants objected related to the liability of the fifteen banks and trust companies under an agreement of indemnity with the Union Trust Company. There was at no time any liability on the part of any of the indemnifying institutions to the American Trust Company, and nothing that could be enforced under it by its receiver. It was solely an undertaking to indemnify the Union Trust Company for any loss it might sustain under its agreement with the directors of the American Trust Company, and the amount of that loss was to be determined "after exhausting the possibility of the directors' guarantee and the possibility of enforcing the stockholders' liability."

In view of the aforegoing and the very difficult task with which the receiver was confronted in making settlement with the Union Trust Company and the indemnifying banks, we are not prepared to hold that under all the circumstances the settlement which was finally ratified on December 4th, 1934, was not a proper one, or that the undertaking of the Union Trust Company and the banks which indemnified it was such as to preclude the Union Trust Company from the right of subrogation. Appellants claim that the order in question violates their constitutional rights, and have cited numerous cases in support of this theory, but an examination of these has convinced us that they are not applicable, because before the order became final all depositors of the American Trust Company were afforded an opportunity to object, and the order was made final only after such objectors had been heard. The order, therefore, which provided for notice to the depositors was proper.

Nor do we find any abuse of the chancellor's discretion in the order authorizing the receiver to enforce the stockholders' liability. He had before him the receiver's report, accompanied by a statement showing the book value as well as the appraised value of the assets, upon the basis of which, after enforcing and collecting a one hundred per cent. statutory stockholders' liability, there would still remain a deficit. Appellants contend that the difference between the book value and appraised value of the assets was so great as to suggest the impropriety of the order, but it should be stated that at no time in any proceeding have they made any attack upon the appraisal. Under such circumstances the chancellor had jurisdiction to determine the necessity for the passage of the order. *Glenn v. Williams,* 60 Md. 93; *Mister v. Thomas,* 122 Md. 445, 89 A. 844.

There remains for consideration the petition of appellants filed on October 20th, 1933, to which a demurrer and amended answer were later filed by the receiver, after which appellants demurred to the receiver's answer. An examination of this petition convinces us that it alleges

no new, additional, or uncontroverted facts, but does in many instances seek to place interpretations upon the admitted facts, which interpretations are recognized as no more than conclusions of the pleader and were, therefore, not admitted by the demurrer. *Ryan v. McLane,* 91 Md. 175, 46 A. 340; *Parr v. State,* 71 Md. 220, 17 A. 1020; *Lipson v. Evans,* 135 Md. 127, 108 A. 470. The action of the court, therefore, in sustaining the demurrer to this petition, as well as in overruling appellants' demurrer to the answer of the receiver, was proper, and since appellants were given leave to file an amended petition and declined to do so, the decree of the chancellor of December 20th, 1934, dismissing the petition, is not objectionable.

It is undoubtedly true that in this and in many other similar cases great hardship results to stockholders by enforcing their statutory liability, but this is a legal and logical result from such stock ownership, when financial reverses overtake the bank, as they did in this case.

*Decrees in Nos. 53 and 54 affirmed, with costs to appellee.*